DJW/2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        **Plaintiff,**

    v.                              **Case No.  07-2233-KHV-DJW**

STACY STURDEVANT, et al.,

        **Defendants.**

### MEMORANDUM AND ORDER

Pending before the Court is Plaintiff United States' Motion for Leave to Amend its Complaint (doc. 34) ("Motion to Amend"), Plaintiff United States' Motion to Reset Dates in the Court's March 26, 2008 Amended Scheduling Order (doc. 36), Plaintiff United States' Motion to Reset Dates in the Court's March 26, 2008 Amended Scheduling Order (Second Request) (doc. 37), and the Joint Motion to Reset Dates in the Court's March 26, 2008 Amended Scheduling Order (Third Request) (doc. 41).  For the reasons set forth below, Plaintiff's Motion to Amend is granted, the Joint Motion to Reset Dates (Third Request) is granted, and the Motion to Reset Dates and Motion to Reset Dates (Second Request) are both denied as moot.

## I.    BACKGROUND

Plaintiff filed this action seeking to enforce the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619 ("Fair Housing Act").[1]  In its original Complaint (doc. 1), Plaintiff alleges that Melissa Kothe was employed by Defendant AIMCO Properties, L.P. from March 2004 until May 3, 2005, as a

---

[1] *See* Compl., at ¶ 1 (doc. 1).

resident services coordinator at the Central Park Towers Apartments.[2]  Plaintiff further alleges that Defendant Stacy Sturdevant, the property manager at Central Park Towers Apartments at the time of Ms. Kothe's employment, and Defendant AIMCO Properties, L.P., Defendant Sturdevant's employer, coerced, intimidated, threatened, or interfered with Ms. Kothe's exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged another person in the exercise or enjoyment of, rights granted or protected by the Fair Housing Act.[3]

According to Plaintiff, Ms. Kothe filed a complaint with the United States Department of Housing and Urban Development ("HUD") on or about May 24, 2005.[4]  Plaintiff also claims that, pursuant to the requirements of 42 U.S.C. §§ 3610(a) and (b), the Secretary of HUD conducted and completed an investigation of Ms. Kothe's complaint and, pursuant to 42 U.S.C. § 3610(g), determined that reasonable cause existed to believe that discriminatory housing practices occurred.[5]  Plaintiff alleges that as a result of this determination, on or about April 20, 2007, the Secretary of HUD issued a Charge of Discrimination pursuant to 42 U.S.C. § 3610(g)(2)(A), charging Defendants Sturdevant and AIMCO Properties, L.P. with engaging in discriminatory housing practices in violation of the Fair Housing Act.[6]

---

[2] *See id.*, at ¶ 7.

[3] *See id.*, at ¶¶ 6, 15, 17, and 21.

[4] *See id.*, at ¶ 15.

[5] *See id.*, at ¶ 16.

[6] *See id.*, at ¶ 17.

Plaintiff claims that, on or about May 2, 2007, Ms. Kothe elected to have the Charge of Discrimination resolved in a civil action in a federal district court pursuant to 42 U.S.C. § 3612(a).[7] Plaintiff further claims that on that same day, HUD's Chief Administrative Law Judge issued a Notice of Election of Judicial Determination and terminated the administrative proceeding on the complaint filed by Ms. Kothe.[8]  According to Plaintiff, under the "shall file" mandate set forth in 42 U.S.C. § 3612(o),[9] Plaintiff then had 30 days from the date Ms. Kothe elected to have the Charge of Discrimination resolved in a civil action in a federal district court to file a complaint on Ms. Kothe's behalf.[10]  Plaintiff filed the original Complaint on June 1, 2007.

Plaintiff timely filed its Motion to Amend on April 21, 2008, which is now before the Court.[11]  Defendant AIMCO Properties, L.P. ("Defendant") is the only defendant that filed an opposition to Plaintiff's Motion to Amend.

While the Motion to Amend was pending, three motions to reset certain deadlines in the Court's March 26, 2008 Amended Scheduling Order (doc. 31) were filed.  The third request was a joint request (doc. 41) seeking to extend all the deadlines identified in the Amended Scheduling

---

[7] *See* Compl., at ¶ 18.

[8]  *See id.*, at ¶ 19.

[9] If an election is made under 42 U.S.C. § 3612(a) to have the Charge of Discrimination resolved in a civil action in a federal court, then, under 42 U.S.C. § 3612(o), "the Secretary shall authorize, and not later than 30 days after the election is made the Attorney General shall commence and maintain, a civil action on behalf of the aggrieved person in a United State district court." 42 U.S.C. § 3612(o).

[10] *See* Pl. United States' Mem. in Reply to Def. AIMCO Properties, L.P.'s Br. in Opp'n to the United States' Mot. For Leave to Amend its Compl. (doc. 39), at 3.

[11]   At the time Plaintiff filed its Motion to Amend, the deadline to file motions to join additional parties or otherwise amend the pleadings was April 21, 2008.  *See* Am. Scheduling Order dated March 26, 2008 (doc. 31), at 1.

Order that were to occur after the deadline to file motions to amend or add new parties.  This third request essentially incorporates the earlier two requests filed by Plaintiff to reset certain deadlines in the Amended Scheduling Order.

On July 29, 2008, the Court entered an Order (doc. 47) vacating the Amended Scheduling Order and declaring that the deadlines would be reset after the Court ruled on Plaintiff's Motion to Amend.  Thus, there are currently no discovery deadlines and trial has not been set.  A status conference is set for December 11, 2008 before Chief Judge Vratil.

## II.    STANDARD

Fed. R. Civ. P. 15(a) governs the addition of new claims as well as the addition of new parties.[12]  Fed. R. Civ. P. 15(a)(2) provides that, after the permissive period, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[13]  Fed. R. Civ. P. 15(a)(2) also provides that "[t]he court should freely give leave when justice so requires."[14]  The Supreme Court has held that "this mandate is to be heeded."[15]

Leave to amend may be denied when the court finds "bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[16]  "The timeliness of the motion to amend may also be considered[]" when determining whether leave to amend should

---

[12] *See U.S. ex rel. Precision Co. v. Koch Indus., Inc.*, 31 F.3d 1015, 1018 (10th Cir. 1994) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)("A motion to add a party is governed by Fed. R. Civ. P. 15(a)."); *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 912-13 (D. Kan. 2007) (citation omitted).

[13] Fed. R. Civ. P. 15(a)(2).

[14] *Id.*

[15] *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted).

[16] *Frank*, 3 F.3d at 1365 (citations omitted).

be denied.[17]  "Absent flagrant abuse, bad faith, futility of amendment, or truly inordinate and unexplained delay, prejudice to the opposing party is the key factor in deciding a motion to amend."[18]  The decision whether or not to allow a proposed amendment rests within the sound discretion of the court.[19]  "In exercising its discretion, the court must keep in mind that the Federal Rules of Civil Procedure are designed to facilitate decisions on the merits rather than on pleading technicalities."[20]

Defendant opposes Plaintiff's Motion to Amend on the grounds of undue delay, undue prejudice, and futility of amendment.

### A.    Undue Delay

"'Lateness by itself does not justify the denial of the amendment.'"[21]  However, the longer the delay in filing the motion to amend, "the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend."[22]  In determining whether undue delay exists, the

---

[17] *Rural Water Dist. No. 4, Douglas County, Kan. v. City of Eudora, Kan.*, Civ. A. No. 07-2463-JAR, 2008 WL 1867984, at *3 (D. Kan. Apr. 24, 2008).

[18] *Rubio v. Turner Unified School Dist. No. 202*, 453 F. Supp. 2d 1295, 1307 (D. Kan. 2006) (citation omitted).

[19] *See Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1494-95 (10th Cir. 1995).

[20] *Rural Water*, 2008 WL 1867984, at *4 (citations omitted); *see Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006)("The purpose of [Fed. R. Civ. P. 15] is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'")(quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[21] *Minter*, 451 F.3d at 1205 (quoting *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)).

[22] *Id.* (quotation and citation omitted).

Tenth Circuit "focuses primarily on the reasons for the delay."[23]  Thus, the Court may refuse leave to amend where the movant has delayed in bringing the motion to amend and the movant fails to provide an adequate explanation for the delay.[24]  In addition, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."[25]  Indeed, where the movant seeks to amend the complaint to assert an alternative theory based on evidence already known to the movant, the court

> need not allow itself to be imposed upon by the presentation of theories seriatim. Liberality in amendment is important to assure a party a fair opportunity to present [its] claims and defenses, but equal attention should be given to the proposition that there must be an end finally to a particular litigation.[26]

Because Plaintiff filed its Motion to Amend before the deadline set forth in the scheduling order for such motions, the Court need not determine whether Plaintiff is required to show "good cause" why the deadline should be extended under Fed. R. Civ. P. 16(b).[27]

**B.**     **Undue Prejudice**

---

[23] *Id.*, at 1206.

[24] *See Panis*, 60 F.3d at 1494-95; *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994).

[25] *Pallottino*, 31 F.3d at 1027 (quotation and citation omitted); *see Steinert v. Winn Group, Inc.*, 190 F.R.D. 680, 684 (D. Kan. 2000) (citation omitted).

[26] *Pallottino*, 31 F.3d at 1027 (quotations and citations omitted).

[27] *See Sithon Maritime Co. v. Holiday Mansion*, 177 F.R.D. 504, 508 (D. Kan. 1998) (citations omitted).

Undue prejudice and undue delay are closely related.[28]  According to the Tenth Circuit, undue prejudice is the most important factor in deciding a motion to amend.[29]  Defendant, as the party opposing the amendment, has the burden of showing undue prejudice.[30]  Under Fed. R. Civ. P. 15(a), undue prejudice means undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant.[31]  "Any amendment invariably causes some 'practical prejudice,' but leave to amend is not denied unless the amendment would work an injustice to the defendants."[32]  Courts have found that undue prejudice often "occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."[33]

## C.       Futility of Amendment

Defendant, as the party asserting futility of amendment, has the burden of establishing futility of amendment.[34]  "Amendment is considered futile if the proposed amendment would not withstand a motion to dismiss or if it otherwise fails to state a claim."[35]  In determining whether amendment

---

[28] *See Minter*, 451 F.3d at 1205.

[29] *See id.*, at 1207.

[30] *See Acker v. Burlington N. & Santa Fe Ry. Co.*, 215 F.R.D. 645, 654 (D. Kan. 2003) (citations omitted); *Sithon Maritime*, 177 F.R.D. at 508 (citation omitted).

[31] *See Minter*, 451 F.3d at 1208; *Jones v. Wildgen*, 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004) (citations omitted).

[32] *Koch v. Koch Indus.*, 127 F.R.D. 206, 209-10 (D. Kan. 1989) (citations omitted).

[33] *Minter*, 451 F.3d at 1208; *see In re Wyo. Tight Sands Antitrust Cases*, 121 F.R.D. 682, 684-85 (D. Kan. 1986).

[34] *See Rural Water*, 2008 WL 1867984, at *5 (citation omitted).

[35] *Id.*, at *3 (citation omitted); *Schepp v. Freemont County, Wyo.*, 900 F.2d 1448, 1451 (10th (continued...)

is futile, the court does not attempt to rule on the merits of the proposed amended complaint, but rather reviews the proposed "amended complaint solely for the purpose of determining if action on the new claim[] would be futile."[36]

In this case, where Defendant argues that amendment is futile because the proposed First Amended Complaint fails to state a claim, "the [C]ourt must analyze [the] proposed amendment as if it were before the [C]ourt on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)."[37]   Courts in the Tenth Circuit now employ a "plausibility" standard in determining whether a complaint can withstand a motion to dismiss for failure to state a claim.[38]  In applying this "plausibility" standard, the Court must first accept all well-pleaded factual allegations as true and view them in a light most favorable to Plaintiff, the pleading party.[39]   "The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do."[40]  The Court then reviews the specific allegations in the proposed First

---

[35](...continued)
Cir. 1990)).

[36] *In re Wyo. Tight Sands*, 121 F.R.D. at 685.

[37] *Rural Water*, 2008 WL 1867984, at * 5 (citing *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007)).

[38] *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Independence Country Club v. Magellan Pipeline Co.*, 2008 WL 750526, at *1-2 (D. Kan. Mar. 18, 2008).

[39] *See Alvarado*, 493 F.3d at 1215; *Rural Water*, 2008 WL 1867984, at * 5 (citation omitted).

[40] *Raytheon Aircraft Co. v. U.S.*, 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007) (citing *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, ---, 127 S.Ct. 1955, 1964-65 (2007)).

Amended Complaint "to determine whether they plausibly support a legal claim for relief."[41]  The issue in resolving a motion to dismiss on the grounds that the complaint fails to state a claim is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'"[42]

## III.   ANALYSIS

By its Motion to Amend, Plaintiff seeks (1) to add five new parties as defendants: (a) NHPMN Management, LLC ("NHPMN"), (b) NHP Management Company ("NHP Management"), (c) Central Park Towers II, L.P. ("CPT II") (d) AIMCO-GP, Inc. ("AIMCO-GP"), and (e) American Management & Investment Company d/b/a AIMCO ("AIMCO"), and (2) to add a pattern or practice race discrimination claim, pursuant to Section 814(a) of the Fair Housing Act, 42 U.S.C. § 3614(a).[43]

As set forth more fully below, under Plaintiff's proposed First Amended Complaint, Plaintiff alleges that the five new defendants, along with the two current defendants, violated the Fair Housing Act, 42 U.S.C. § 3617, by coercing, intimidating, threatening, or interfering with Ms. Kothe's exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act.  Plaintiff further alleges that the conduct of the five new defendants and the two current defendants constitutes a pattern or practice of race discrimination, in violation of the Fair Housing Act, 42 U.S.C. § 3614(a).

---

[41] *Alvarado*, 493 F.3d at 1215, n. 2 (citations omitted).

[42] *Raytheon*, 501 F. Supp. 2d at 1327 (citations and quotations omitted).

[43] *See* Pl. United States' Mot. for Leave to Amend its Compl. (doc. 34), at 1-2.

In order to determine whether Plaintiff's Motion to Amend should be granted, the Court will review the allegations contained in Plaintiff's proposed First Amended Complaint with respect to the defendants and the new pattern or practice race discrimination claim.

**A.    Plaintiff's Allegations Regarding the Defendants**

This case involves alleged violations of the Fair Housing Act at the Central Park Towers Apartments between January 2003 and July 2005.[44]   Plaintiff makes the following allegations in its proposed First Amended Complaint with respect to the defendants, all of which, according to Plaintiff, took place or were true during all or part of this time period between January 2003 and July 2005.[45]

CPT II was an owner of the Central Park Towers Apartments, and was engaged in or had the right to engage in the management, operation, and/or rental of dwelling units at the Central Park Towers Apartments.[46]   In addition, NHPMN served as an agent for CPT II in the property management of the Central Park Towers Apartments.[47]   Accordingly, CPT II engaged in or had the right to engage in the exercise or control over its agent NHPMN, and NHPMN submitted to the control of CPT II in the management and/or operation of the Central Park Towers Apartments.[48]

---

[44] *See* First Am. Compl., at ¶ 1.

[45] *See* Pl.'s proposed First Am. Compl. (doc. 34-2) attached as Ex. 1 to Pl. United States' Mot. For Leave to Amend its Compl. (doc. 34).

[46] *See id.*, at ¶ 8.

[47] *See id.*

[48] *See id.*, at ¶¶ 8 and 9.

Defendant also owned or managed the Central Park Towers Apartments.[49]  In addition, AIMCO also managed and operated the Central Park Towers Apartments.[50]  Ms. Kothe  worked at the Central Park Towers Apartments from March 2004 until May 3, 2005, as a resident services coordinator.[51]  During that time, Ms. Kothe was an employee of Defendant and AIMCO.[52]

Defendant Sturdevant was an agent of CPT II, and an employee of Defendant and/or AIMCO.[53]  In the course of that agency and during that employment, Defendant Sturdevant participated in the management, operation, and/or rental of dwelling units at the Central Park Towers Apartments.[54]  Accordingly, CPT II, Defendant, and AIMCO engaged in or had the right to engage in the exercise or control over Defendant Sturdevant.[55]  In addition, NHPMN, as the property management company for the Central Park Towers Apartments, had the right to exercise control over Defendant Sturdevant's management, operation, and/or rental of dwelling units at the Central Park Tower Apartments.[56]

Further, AIMCO-GP was the general partner of Defendant.[57]  Defendant owned substantially all of AIMCO's assets and managed the daily operations of AIMCO's business and assets, and

---

[49] *See id.*, at ¶ 5.

[50] *See id.*, at ¶ 7.

[51] *See* proposed First Am. Compl., at ¶ 12.

[52] *See id.*

[53] *See id.*, at ¶¶ 4, 5, and 7.

[54] *See id.*, at ¶ 4.

[55] *See id.*, at ¶¶ 5, 7, and 8.

[56]  *See id.*, at ¶¶ 4 and 9.

[57] *See* proposed First Am. Compl, at ¶¶ 5 and 6.

substantially all of Defendant AIMCO's assets were required to be owned by Defendant.[58]   In addition, Defendant was the parent of its subsidiaries, NHPMN, NHP Management, and CPT II.[59]

Finally, NHP Management generated the paychecks for Defendant Sturdevant and Ms. Kothe.[60]   In addition, NHP Management may have exercised control or may have had the power to exercise control over Defendant Sturdevant and Ms. Kothe.[61]

### B.      Plaintiff's Allegations of Violations of the Fair Housing Act

In both its original Complaint and its proposed First Amended Complaint, Plaintiff makes the following allegations of violations of the Fair Housing Act. On or about April 22, 2005, HUD investigators interviewed Ms. Kothe in connection with a fair housing complaint lodged by a resident at the Central Park Towers Apartments against Defendant Sturdevant.[62]   Ms. Kothe informed the HUD investigators that she had witnessed Defendant Sturdevant using inappropriate and disrespectful language toward a tenant, and attempting to provoke the tenant into an altercation.[63]   According to Plaintiff, Defendant Sturdevant asked Ms. Kothe what Ms. Kothe had told the HUD investigators and then became angry when Ms. Kothe refused to provide Defendant Sturdevant with complete answers.[64]

---

[58] *See id.*, at ¶ 5.

[59] *See id.*, at ¶¶ 5 and 10.

[60] *See id.*, at ¶ 10.

[61] *See id.*

[62] *See id.*, at ¶ 13; Compl., at ¶ 8.

[63]  *See* proposed First Am. Compl., at ¶ 14; Compl., at ¶ 9.

[64] *See* proposed First Am. Compl., at ¶ 15; Compl., at ¶ 10.

A few days after this conversation, on April 27, 2005, Defendant Sturdevant overheard Ms. Kothe tell a coworker that she advised a tenant at the Central Park Towers Apartments to contact an attorney or HUD regarding an eviction notice that the tenant had received.[65]  Upon overhearing this, Defendant Sturdevant became angry and ordered Ms. Kothe to never again give a tenant advice about contacting either an attorney or HUD.[66]  That same day, Defendant Sturdevant falsely accused Ms. Kothe of falsifying a document that Ms. Kothe had previously submitted on behalf of a tenant to the Kansas Department of Social and Rehabilitative Services and that, as a result of this false accusation, Ms. Kothe was suspended and then fired from her employment.[67]

Based on these alleged actions, Plaintiff in its original Complaint brought an action against Defendant and Sturdevant for their alleged violations of the Fair Housing Act, 42 U.S.C. § 3617, specifically their coercion, intimidation, threats, and interference with Ms. Kothe's exercise or enjoyment of, or on account of her exercise or enjoyment, or on account of aiding or encouraging another person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act.[68]  In Plaintiff's proposed First Amended Complaint, Plaintiff seeks to add the five proposed new defendants to this alleged 42 U.S.C. § 3617 violation.[69]

Plaintiff also adds several new allegations in its proposed First Amended Complaint in support of its proposed new pattern or practice race discrimination claim.  Plaintiff alleges that Defendant Sturdevant, while acting as the manager of the Central Park Tower Apartments, openly

---

[65] *See* proposed First Am. Compl., at ¶ 16; Compl., at ¶ 11.

[66] *See* proposed First Am. Compl., at ¶ 17; Compl., at ¶ 12.

[67] *See* proposed First Am. Compl., at ¶¶ 18 and 19; Compl., at ¶¶ 13 and 14.

[68] *See* Compl., at ¶ 21.

[69] *See* proposed First Am. Compl., at ¶ 27.

displayed and distributed racially hostile materials, symbols and items, such as hangman's nooses, on the premises of the Central Park Tower Apartments.[70]  Plaintiff further alleges that Defendant Sturdevant, while acting as the manager of the Central Park Tower Apartments, openly and pervasively used racially derogatory and hostile remarks about African-American residents, to African-American residents, and to persons who associated with African-American residents of the Central Park Tower Apartments.[71]  Plaintiff also alleges that Defendant Sturdevant, while acting as the manager of the Central Park Tower Apartments, treated the white residents more favorably than the African-American residents in the terms and conditions of their residency.[72]

Plaintiff alleges that the proposed new defendants, NHPMN, NHP Management, CPT II, AIMCO-GP, and AIMCO, as well as Defendant, all knew or should have known about Defendant Sturdevant's conduct.[73]  Plaintiff claims that the five proposed new defendants as well as the two current defendants all discriminated in the terms, conditions, or privileges of the rental of a dwelling to renters because of race, in violation of 42 U.S.C. § 3604(b).[74]  Thus, Plaintiff alleges that the conduct of the five proposed new defendants and the two current defendants constitutes a pattern or practice of race discrimination under the Fair Housing Act, 42 U.S.C. § 3614(a).[75]

### C.    Adding NHPMN and NHP Management as Defendants

---

[70] *See* proposed First Am. Compl., at ¶ 32.

[71] *See id.*, at ¶ 33.

[72] *See id.*, at ¶ 34.

[73] *See id.*, at ¶ 36.

[74] *See id.*, at ¶ 37.

[75] *See id.*, at ¶ 38.

Defendant does not oppose Plaintiff's request to add NHPMN and NHP Management to the claim asserted in the original Complaint - a violation of the Fair Housing act, 42 U.S.C. § 3617.[76] Thus, the Court will grant this portion of Plaintiff's Motion to Amend as unopposed.

Defendant does oppose Plaintiff's Motion to Amend to add the other three defendants - CPT II, AIMCO-GP, and AIMCO - to the 42 U.S.C. § 3617 claim asserted in the original Complaint, and to add a new claim of pattern or practice race discrimination under 42 U.S.C. § 3614(a) against the proposed five new defendants and the two current defendants.

### D.    Adding CPT II as a Defendant

Defendant opposes Plaintiff's Motion to Amend to add CPT II, an alleged owner of the Central Park Tower Apartments, as a new defendant on the grounds of undue delay, undue prejudice, and futility of amendment.

### 1.    Undue Delay

Defendant argues that at the time of filing its original Complaint, Plaintiff knew or should have known "of the facts upon which the proposed claim against CPT II is based, and that [Plaintiff] made a decision that claims against CPT II were not warranted."[77] Defendant claims that the "proposed First Amended Complaint (Doc. 34-2) does not allege any facts about CPT II that were not known to Plaintiff when the Complaint was filed."[78]  In support of these claims, Defendant filed the Affidavit of David L. Heinemann ("Affidavit") (doc. 38-2).

---

[76] *See* Def. AIMCO Properties, L.P.'s Mem. in Opp'n to Pl. United States' Mot. for Leave to Amend its Compl. (doc. 38), at 1.

[77] *Id.*, at 11.

[78] *Id.*

In his Affidavit, Mr. Heinemann states he has been the attorney for CPT II since May 2006 in litigation in the District of Kansas as well as in the administrative proceeding for the complaint filed by Ms. Kothe with HUD.[79]  Mr. Heinemann further states that after he received the Charge of Discrimination from HUD, he contacted Sean Keveney, the attorney in the United States Department of Justice's Civil Rights Division, Housing and Civil Enforcement Section, who had been assigned the responsibility to prepare and file the Plaintiff's original Complaint in this case.[80]

Mr. Heinemann states he informed Mr. Keveney of CPT II's position that it should not be joined as a defendant in this case because CPT II had no involvement in the hiring or termination of Ms. Kothe or the hiring or supervision of Defendant Sturdevant.[81]  In support of these claims, Mr. Heinemann states he provided Mr. Keveney with a copy of a Management Agreement that was in effect for the Central Park Towers Apartments during the time of Ms. Kothe's employment.[82] Finally, Mr. Heinemann states that Mr. Keveney informed him that based on the information provided by Mr. Heinemann, Mr. Keveney would recommend to his superiors that CPT II not be named as a defendant unless something turned up in discovery indicating that CPT II had actual involvement in the hiring or firing of Ms. Kothe.[83]

---

[79] *See* Aff. of David L. Heinemann (doc. 38-2), at ¶ 3.

[80] *See id.*, at ¶ 6.

[81] *See id.*

[82] *See id.*, at ¶ 7.

[83] *See id.*, at ¶ 8.

To determine whether Plaintiff unduly delayed in seeking to amend its original Complaint to include CPT II as a defendant, the Court must focus on Plaintiff's reasons for this delay.[84]  As explained by Plaintiff, once Ms. Kothe elected to have Plaintiff file a complaint on her behalf, under 42 U.S.C. § 3612(o), Plaintiff only had 30 days to file the original Complaint.  Plaintiff claims that this 30 day time frame did not provide Plaintiff with sufficient time to obtain all the facts necessary to sort out the details of the complex corporate structure of Defendant and its relationship with CPT II, and to determine the appropriateness of adding CPT II as a defendant.

Plaintiff further explains that, after filing its original Complaint, it obtained new information through written discovery, interviews with numerous tenants of the Central Park Tower Apartments, and interviews with three of Defendant's managerial employees, which demonstrated to the satisfaction of Plaintiff the appropriateness of adding CPT II as a defendant.  The Court also notes that Defendant admits that according to Mr. Keveney, it was possible that CPT II would later be added as a defendant if something turned up in discovery.  According to Plaintiff, it filed the Motion to Amend approximately two weeks after it obtained the most recent information relevant to its decision to seek leave to amend its original Complaint.  The Court is satisfied with Plaintiff's explanation for the delay in filing the Motion to Amend.   In addition, the Court notes that it is undisputed that Plaintiff filed the Motion to Amend before the deadline set forth in the then applicable Amended Scheduling Order (doc. 31).

The Court therefore declines to deny the Motion to Amend to include CPT II as a defendant on the grounds of undue delay.

### 2.    Undue Prejudice

---

[84] *See Minter*, 451 F.3d at 1206.

Defendant also opposes the Motion to Amend to add CPT II as a defendant on the grounds of undue prejudice.  Accordingly, the Court must determine whether allowing Plaintiff to amend its original Complaint to add CPT II as a defendant will result in undue difficulty in defending this lawsuit.[85]  Defendant has the burden of showing undue prejudice.[86]  Defendant argues that adding CPT II as a defendant in this case would create undue prejudice because it would require substantial extensions of all the pretrial deadlines, as well as a substantial continuance of the trial date.  Defendant also claims that amending the original Complaint to include CPT II as a defendant would cause Defendant undue difficulty in defending itself.

The Court is not persuaded by Defendant's arguments.  Defendant has failed to show how adding CPT II as a defendant will cause Defendant undue difficulty in defending itself.  The scheduling order in this case has been vacated and there are currently no deadlines in place.  Thus, the deadlines in this case already need to be extended and reset.  The Court also notes that as of the date of the Motion to Amend, Plaintiff was the only party to serve discovery.  While adding CPT II as a defendant to this case may cause some "practical prejudice," the Court concludes that adding CPT II as a defendant will not work an injustice on Defendant.

The Court therefore declines to deny the Motion to Amend to include CPT II as a defendant on the grounds of undue prejudice.

### 3.      Futility of Amendment

Defendant also opposes the Motion to Amend to add CPT II as a defendant on the grounds that amendment would be futile because the proposed First Amended Complaint fails to state a claim

---

[85] *See Jones*, 349 F. Supp. 2d at 1361 (citations omitted).

[86] *See Acker*, 215 F.R.D. at 654 (citation omitted); *Sithon Maritime*, 177 F.R.D. at 508 (citation omitted).

against CPT II.   Defendant has the burden of showing that amendment would be futile.[87]   In analyzing Defendant's futility argument, the Court will review the proposed First Amended Complaint was if it were before the Court on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[88] Accordingly, the Court will employ a "plausibility" standard in determining whether the proposed First Amended Complaint can withstand a motion to dismiss for failure to state a claim.[89]

In applying this standard, the Court must accept all well-pleaded factual allegations in the First Amended Complaint as true and view them in a light most favorable to Plaintiff.[90]   The Court must then review the specific allegations against CPT II to determine whether they plausibly support a legal claim of relief.[91]   The issue is not whether Plaintiff will prevail against CPT II, but whether Plaintiff is entitled to offer evidence to support its claims against CPT II.[92]

Defendant argues that amendment would be futile because "CPT II merely owned the subject property; it did not exercise any control over any of the employment decisions made by its Management Agent at the property."[93]   Defendant further argues that "CPT II had no involvement in [Defendant] Sturdevant's alleged recommendation that Ms. Kothe's employment be terminated,

---

[87] See Rural Water, 2008 WL 1867984, at *5 (citation omitted).

[88] See id. (citing Anderson, 499 F.3d at 1238).

[89] See Alvarado, 493 F.3d at 1215.

[90] See id.

[91] See id., at 1215, n. 2.

[92] See Raytheon, 501 F. Supp. 2d at 1327.

[93] Def. AIMCO Properties, L.P.'s Mem. in Opp'n to Pl. United States' Mot. For Leave to Amend its Compl. (doc. 38), at 13.

the suspension of Ms. Kothe from employment, the investigation into Ms. Kothe's alleged falsification of a document, or the decision to terminate Ms. Kothe's employment."[94]

The Court is not persuaded by Defendant's futility argument. Defendant has failed to explain why amending the original Complaint to include CPT II as a defendant would be futile. Instead, Defendant argues about the merits of the proposed First Amended Complaint, a matter that is not before the Court. The Court will not consider matters outside the First Amended Complaint in determining whether amendment would be futile. Having reviewed the First Amended Complaint and accepted all well-pleaded facts as true, the Court finds that Defendant has failed to show that the allegations contained in the proposed First Amended Complaint do not plausibly support a legal claim of relief against CPT II. The Court concludes that Plaintiff is entitled to offer evidence to support its claims against CPT II.

The Court therefore declines to deny the Motion to Amend to add CPT II as a defendant on the grounds of futility of amendment.

### E.   Adding AIMCO-GP and AIMCO as Defendants

Defendant opposes Plaintiff's Motion to Amend to add AIMCO-GP and AIMCO as new defendants on the grounds of undue delay. Defendant argues that Plaintiff has not adequately explained its delay in bringing suit against AIMCO-GP and AIMCO. Defendant further argues that Plaintiff failed to identify facts pertaining to AIMCO-GP and AIMCO that Plaintiff was unaware of at the time Plaintiff filed its original Complaint.

The Court has considered Plaintiff's explanation for the delay in bringing suit against AIMCO-GP and AIMCO, and finds that Plaintiff has adequately explained the delay. As set forth

---

[94] *Id.*

above in the Court's analysis of adding CPT II as a defendant, the 30 day time frame starting from the date Ms. Kothe elected to have Plaintiff file a complaint on her behalf did not provide Plaintiff with sufficient time to obtain all the facts necessary to sort out the details of the complex corporate structure of Defendant, and to determine the appropriateness of adding AIMCO-GP and AIMCO as defendants.   Plaintiff obtained information after filing its original Complaint that demonstrated to the satisfaction of Plaintiff the appropriateness of adding AIMCO-GP and AIMCO as defendants. Plaintiff filed its Motion to Amend within two weeks of receiving the most recent information relevant to Plaintiff's decision to include AIMCO-GP and AIMCO as defendants. Plaintiff also filed the Motion to Amend before the deadline set forth in the then applicable Amended Scheduling Order (doc. 31).

The Court therefore declines to deny the Motion to Amend to add AIMCO-GP and AIMCO as new defendants on the grounds of undue delay.

**F.     New Pattern or Practice Race Discrimination Claim Under the Fair Housing Act - 42 U.S.C. § 3614(a)**

Defendant opposes Plaintiff's Motion to Amend to add a pattern or practice race discrimination claim on the grounds of undue delay, undue prejudice, and futility of amendment.

### 1.     Undue Delay

Defendant argues that Plaintiff failed to demonstrate that it did not know or have reason to know of the facts upon which this new pattern or practice race discrimination claim is based. Defendant further argues that Plaintiff has failed to provide an adequate explanation for the delay

in filing the Motion to Amend to include a new claim of pattern or practice race discrimination.  In determining whether undue delay exists, the Court must focus on Plaintiff's reasons for the delay.[95]

Plaintiff has explained that it only had 30 days from the date Ms. Kothe elected to have her Charge of Discrimination resolved in a civil action in a federal district court to investigate and then file the original Complaint.  This 30 day time period did not provide Plaintiff with sufficient time to determine the appropriateness of adding a pattern or practice race discrimination claim.  Plaintiff explained that it discovered information after filing the original Complaint which demonstrated the appropriateness of bringing a pattern or practice race discrimination claim, and that Plaintiff filed the Motion to Amend within two weeks of receiving the most recent information that assisted Plaintiff's decision to amend to add a new claim.  The Court finds that Plaintiff has provided an adequate explanation for the delay in seeking to amend its original Complaint to add the pattern or practice race discrimination claim.  In addition, the Court notes that Plaintiff filed the Motion to Amend within the time period set forth in the then applicable Amended Scheduling Order (doc. 31).

The Court therefore declines to deny the Motion to Amend to include a pattern or practice race discrimination claim on the grounds of undue delay.

### 2.    Undue Prejudice

Defendant also argues that it will be unduly prejudiced by the adding of a new pattern or practice race discrimination claim.  Thus, the Court must determine whether allowing Plaintiff to amend its original Complaint to including a new pattern or practice race discrimination claim will result in undue difficulty in defending this lawsuit.[96]  Defendant has the burden of showing undue

---

[95] *See Minter*, 451 F.3d at 1206.

[96] *See Jones*, 349 F. Supp. 2d at 1361 (citations omitted).

prejudice.[97]  In support of its undue prejudice argument, Defendant claims that this new claim arises out of a subject matter different from what was set forth in the original Complaint and raises significant new factual issues.  Defendant argues that the new factual issues will require extensive additional discovery.

The Court is not persuaded by Defendant's arguments.  Defendant has failed to show how adding a new pattern or practice race discrimination claim will cause Defendant undue difficulty in defending itself.  Further, Defendant has not shown that the pattern or practice race discrimination claim arises out of a subject matter completely different from what was set forth in the original Complaint.  Rather, it appears that after filing the original Complaint, Plaintiff discovered additional facts regarding the discriminatory conduct of Defendant Sturdevant, which Plaintiff has relied upon, in part, to support the new pattern or practice race discrimination claim.  In addition, the Court has vacated the scheduling order in this case and, therefore, there are no deadlines currently in place.  Thus, the deadlines in this case already need to be extended and reset.  The Court also notes that as of the date of the Motion to Amend, Plaintiff was the only party to serve discovery.  The Court finds that while there may be some "practical prejudice," Defendant will not suffer an injustice from allowing Plaintiff to amend its original Complaint to include the new pattern or practice race discrimination claim.

The Court therefore declines to deny the Motion to Amend to include a pattern or practice race discrimination claim on the grounds of undue prejudice.

### 3.    Futility of Amendment

---

[97] *See Acker*, 215 F.R.D. at 654 (citation omitted); *Sithon Maritime*, 177 F.R.D. at 508 (citation omitted).

Defendant argues that Plaintiff's Motion to Amend to include a pattern or practice race discrimination claim should be denied on the grounds of futility of amendment. Defendant has the burden of establishing futility of amendment.[98]   In analyzing Defendant's futility argument, the Court will review the proposed First Amended Complaint was if it were before the Court on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[99]   Accordingly, the Court will employ a "plausibility" standard in determining whether the proposed First Amended Complaint can withstand a motion to dismiss for failure to state a claim.[100]

In applying this standard, the Court must accept all well-pleaded factual allegations in the First Amended Complaint as true and view them in a light most favorable to Plaintiff.[101]   The Court must then review the specific allegations with respect to the new pattern or practice race discrimination claim to determine whether they plausibly support a legal claim of relief.[102]   The issue is not whether Plaintiff will prevail on its pattern or practice race discrimination claim, but whether Plaintiff is entitled to offer evidence to support its pattern or practice race discrimination claim.[103]

In support of its futility argument, Defendant claims that the Motion to Amend should be denied because amendment to include the new pattern or practice race discrimination claim would be futile under the plausibility standard. Defendant claims that Plaintiff's proposed First Amended

---

[98] See Rural Water, 2008 WL 1867984, at *5 (citation omitted).

[99] See id. (citing Anderson, 499 F.3d at 1238).

[100] See Alvarado, 493 F.3d at 1215.

[101] See id.

[102] See id., at 1215, n. 2.

[103] See Raytheon, 501 F. Supp. 2d at 1327.

Complaint fails to state a claim because it only contains conclusory allegations and mere labels and conclusions with respect to its proposed new pattern or practice race discrimination claim.

The Court is not persuaded by Defendant's futility argument. Defendant has failed to explain why amending the original Complaint to include a pattern or practice race discrimination claim would be futile. Having reviewed the proposed First Amended Complaint and accepted all well-pleaded facts as true, the Court finds that Defendant has failed to show that the allegations do not support a legal claim for relief. The Court concludes that Plaintiff is entitled to offer evidence to support its pattern or practice race discrimination claim.

The Court therefore declines to deny the Motion to Amend to add a new pattern or practice race discrimination claim on the grounds of futility of amendment.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's Motion to Amend. Having granted the Motion to Amend, the Court will also grant the Joint Motion to Reset Dates (Third Request) wherein the parties asked the Court to extend all the deadlines in the March 26, 2008 Amended Scheduling Order (doc. 31) that were to occur subsequent to the deadline to file motions to amend or add new parties. The Court will deny the Motion to Reset Dates and the Motion to Reset Dates (Second Request) as moot.

**IT IS THEREFORE ORDERED** that Plaintiff United States' Motion for Leave to Amend its Complaint (doc. 34) is granted. Plaintiff shall file and serve its First Amended Complaint **within 10 days** of the entry of this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Joint Motion to Reset Dates in the Court's March 26, 2008 Amended Scheduling Order (Third Request) (doc. 41) is granted. **Within 20 days** of responsive pleadings being filed by Defendants AIMCO Properties, L.P., Stacy Sturdevant, NHPMN

Management, LLC, NHP Management Company, Central Park Towers II, L.P., AIMCO-GP, Inc., and American Management & Investment Company d/b/a AIMCO, the parties shall submit a joint proposed Fourth Amended Scheduling Order resetting the deadlines occurring after the April 21, 2008 deadline to join additional parties or otherwise amend the pleadings set forth in the Amended Scheduling Order (doc. 31).

**IT IS FURTHER ORDERED** that Plaintiff United States' Motion to Reset Dates in the Court's March 26, 2008 Amended Scheduling Order (doc. 36) is denied as moot.

**IT IS FURTHER ORDERED** that Plaintiff United States' Motion to Reset Dates in the Court's March 26, 2008 Amended Scheduling Order (Second Request) (doc. 37) is denied as moot.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 11th day of September 2008.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:     All counsel and *pro se* parties