**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**        )<br>                                                                )<br>                        **Plaintiff,**         )<br>                                                                )         **CIVIL ACTION**<br>**v.**                                                           )         **No. 07-2233-KHV**<br>                                                                )<br>**STACY STURDEVANT, et al.,**                )<br>                                                                )<br>                        **Defendants.**      )<br>_____) | |

**MEMORANDUM AND ORDER**

The United States of America brings suit against Stacy Sturdevant, AIMCO Properties L.P., AIMCO-GP, Inc., Apartment Investment and Management Company d/b/a AIMCO ("AIMCO"), NHPMN Management, LLC, NHP Management Company and Central Park Towers II, L.P. ("CPT II") under Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. §§ 3601 et seq.[1] See First Amended Complaint (Doc. #51) filed September 18, 2008. This matter comes before the Court on the Motion To Dismiss Of Defendants The Aimco Entities (Doc. #62) filed October 16, 2008 and Defendant Central Park Towers II, L.P.'s Motion To Dismiss Plaintiff's First Amended Complaint (Doc. #65) filed October 24, 2008. For reasons stated below, the Court overrules defendants' motions.

**Legal Standards**

In ruling on defendants' motions to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well pleaded facts in the complaint and views them in a light most favorable to plaintiff. See Zinermon v. Burch, 494 U.S. 113, 118 (1990); Swanson v.

---

[1] The Court refers collectively to AIMCO Properties L.P., AIMCO-GP, Inc., AIMCO, NHPMN Management, LLC and NHP Management Company as the "AIMCO entities."

Bixler, 750 F.2d 810, 813 (10th Cir. 1984). Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. See Bell Atl. Corp. v. Twombly, -- U.S. --, 127 S. Ct. 1955, 1964-65 (2007). In other words, plaintiff must allege facts sufficient to state a claim which is plausible – rather than merely conceivable – on its face. See id. The Court makes all reasonable inferences in favor of plaintiff. See Zinermon, 494 U.S. at 118; see also Rule 8(a), Fed. R. Civ. P.; Lafoy v. HMO Colo., 988 F.2d 97, 98 (10th Cir. 1993). The Court, however, need not accept as true those allegations which state only legal conclusions. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support its claims. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). Although plaintiff need not precisely state each element of its claims, it must plead minimal factual allegations on those material elements which it must prove. See Hall, 935 F.2d at 1110.

## Facts

The United States alleges the following facts which the Court accepts as true for purposes of ruling on defendants' motions to dismiss.

AIMCO is a real estate investment trust which is traded on the New York Stock Exchange under the name AIV. First Amended Complaint (Doc. #51) ¶ 7. AIMCO's business address is 4582 South Ulster Street Parkway, Denver, Colorado. Id.

AIMCO Properties, L.P. is a Delaware limited partnership with its principal place of business in Denver, Colorado. Id. ¶ 5.

From January of 2003 to July of 2005, the following relationships existed among defendants. AIMCO-GP, Inc. was a general partner of AIMCO Properties, L.P.[2]  Id. ¶ 5.  AIMCO Properties, L.P. owned substantially all of AIMCO's assets and managed the daily operations of AIMCO's business and assets.  Id.  AIMCO Properties, L.P. was the parent company of CPT II and NHPMN Management, LLC.  Id.

AIMCO and/or AIMCO Properties, L.P. owned, managed and/or operated a real estate portfolio of 1,499 apartment properties in 47 states, the District of Columbia and Puerto Rico. Id. ¶¶ 5, 7.  This portfolio included the Central Park Towers Apartments at 15 North 10th Street in Kansas City, Kansas (the "Apartments").  Id. ¶¶ 4-5.

AIMCO and/or AIMCO Properties, L.P. employed Stacy Sturdevant to manage, operate and/or rent dwelling units at the Apartments.  Id. ¶ 4.  AIMCO and/or AIMCO Properties, L.P. also employed and/or exercised control over the employees who supervised Sturdevant.  Id. ¶¶ 5, 7. Sturdevant acted as an agent of CPT II.  Id. ¶ 4.  In addition, NHPMN Management, LLC had the right to exercise control over Sturdevant's management, operation, and/or rental of the Apartments. Id.

AIMCO and/or AIMCO Properties, L.P. employed Melissa Kothe as resident services coordinator at the Apartments.[3]  Id. ¶¶ 5, 7, 12.  AIMCO and/or AIMCO Properties, L.P. employed and/or exercised control or had the power to exercise control over Kothe and the persons who supervised her.  Id. ¶¶ 5, 7.

---

[2]  AIMCO-GP, Inc. is a Delaware corporation with its registered agent's address located in Wilmington, Delaware.  Id. ¶ 6.

[3]  Kothe worked in this capacity from March of 2004 to May 3, 2005.  Id. ¶ 12.

CPT II is a Kansas limited partnership with its registered office in Topeka, Kansas. Id. ¶ 8. CPT II owned the Apartments. Id. CPT II was engaged in or had the right to engage in the management, operation and/or rental of dwelling units at the Apartments. Id. Regarding management of the Apartments, (1) NHPMN Management, LLC served as an agent for CPT II; (2) CPT II exercised control or had the right to exercise of control over NHPMN Management, LLC; and (3) CPT II exercised or had the right to exercise control over Sturdevant. Id.

NHPMN Management, LLC is a Delaware limited liability company with its registered agent in Wilmington, Delaware. Id. ¶ 9. NHPMN Management, LLC served as property management company for the Apartments. Id. In this capacity, NHPMN Management, LLC operated and/or managed the Apartments. Id. NHPMN Management, LLC acted as an agent of CPT II and submitted to CPT II's control or right to control the management and operation of the Apartments. Id. NHPMN Management, LLC had the right to exercise control over Sturdevant's management of the Apartments. Id.

NHP Management Company is an entity registered in the District of Columbia. Id. ¶ 10. NHP Management Company was a subsidiary of AIMCO Properties, L.P. and generated paychecks for Sturdevant, Kothe and/or the persons who supervised them. Id. NHP Management Company may have exercised control or may have had the power to exercise control over Sturdevant, Kothe and/or the persons who supervised them. Id.

While acting as manager of the Apartments, Sturdevant (1) openly displayed and distributed on the premises racially hostile materials, symbols and items such as hangman's nooses; (2) openly and pervasively referred to African-Americans as "niggers" and made other racially derogatory and hostile remarks about African-American residents to African-Americans residents and to persons

who associated with African-American residents; (3) treated white residents more favorably than African-American residents in the terms and conditions of their residency; and (5) engaged in other discriminatory conduct on the basis of race. Id. ¶¶ 32-35. AIMCO, AIMCO Properties, L.P., AIMCO-GP, Inc., NHPMN Management, LLC, NHP Management Company and CPT II knew or should have known about Sturdevant's conduct. Id. ¶ 36.

On April 22, 2005, two investigators from the United States Department of Housing and Urban Development ("HUD") interviewed Kothe in connection with a fair housing complaint against Sturdevant by a resident of the Apartments. Id. ¶ 13. Kothe told the investigators that she had witnessed Sturdevant using inappropriate and disrespectful language toward a tenant and attempting to provoke the tenant into an altercation. Id. ¶ 14. On that day and a few days later, Sturdevant asked Kothe what she had told the HUD investigators. Id. ¶ 15. Kothe refused to give complete answers and Sturdevant became angry with her. Id.

On April 27, 2005, Sturdevant heard Kothe tell a co-worker that Kothe had advised a tenant to contact an attorney or HUD regarding an eviction notice which the tenant received. Id. ¶ 16. Sturdevant became angry and ordered Kothe to never again advise a tenant to contact an attorney or HUD. Id.

On the same day, Sturdevant wrongly accused Kothe of falsifying a document which Kothe had submitted on behalf of a tenant to the Kansas Department of Social and Rehabilitative Services. Id. ¶ 18. Sturdevant falsely accused Kothe because she had cooperated with HUD investigators and advised a tenant to contact HUD or a lawyer. Id. As a result of the false accusation, AIMCO Properties L.P., AIMCO, NHPMN Management, LLC, and/or NHP Management Company suspended Kothe's employment and later fired her. Id. ¶ 19.

On May 24, 2005, Kothe filed a complaint with HUD under Section 810(a) of the FHA, 42 U.S.C. § 3610(a), alleging a violation of 42 U.S.C. § 3617.[4]  Id. ¶ 20.  Kothe alleged that defendants coerced, intimidated, threatened or interfered with her on account of her having exercised or enjoyed, or on account of her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by Sections 803, 804, 805 or 806 of the FHA.  Id. Pursuant to 42 U.S.C. §§ 3610(a) and (b), the Secretary of HUD conducted an investigation, attempted conciliation and prepared a final investigative report.  Id. ¶ 21.  Based on information gathered during the investigation, pursuant to 42 U.S.C. § 3610(g)(1), the Secretary determined that reasonable cause existed to believe that discriminatory housing practices had occurred.  Id.

On April 20, 2007, the Secretary issued a Charge of Discrimination pursuant to 42 U.S.C. § 3610(g)(2)(A), charging that Sturdevant, AIMCO Properties, L.P., NHPMN Management, LLC, and CPT II engaged in a discriminatory housing practice in violation of Section 818 of the Fair

---

[4]   Section 3610(a) provides as follows:

An aggrieved person may, not later than one year after an alleged discriminatory housing practice has occurred or terminated, file a complaint with the Secretary alleging such discriminatory housing practice.  The Secretary, on the Secretary's own initiative, may also file such a complaint.

42 U.S.C. § 3610(a).

Section 3617 provides as follows:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

Housing Act. Id. ¶ 22.[5]  On May 2, 2007, Kothe elected to have the Charge of Discrimination resolved in a civil action filed in federal district court pursuant to 42 U.S.C. § 3612(a). Id. ¶ 23. On May 2, 2007, HUD's Chief Administrative Law Judge issued a Notice of Election of Judicial Determination and terminated the administrative proceeding on Kothe's complaint. Id. ¶ 24. The Secretary of HUD subsequently authorized the Attorney General to commence a civil action pursuant to 42 U.S.C. § 3612(o). Id. ¶ 25.

## Analysis

The United States asserts two claims. Count I alleges that defendants retaliated against Kothe on account of her having exercised or enjoyed, or on account of her having aided or encouraged any other person in the exercise or enjoyment of, rights granted or protected by the FHA. Count II claims that through Sturdevant's discriminatory conduct, defendants engaged in a pattern or practice of resistance to the full enjoyment of rights granted by the FHA or a denial to a group of persons rights granted by the FHA. The AIMCO entities assert that the government has not sufficiently alleged that they engaged in a pattern or practice of discrimination. CPT II contends that the government has not stated a plausible claim for vicarious liability against it.

### I.      Pattern And Practice Of Discrimination

The United States claims that through Sturdevant, defendants engaged in a pattern or practice of resistance to the full enjoyment of rights granted by the FHA. The AIMCO entities assert that the government has not alleged facts sufficient to state a claim that they engaged in a pattern or practice of race discrimination. FHA Section 3604(b) makes it unlawful "[t]o discriminate against

---

[5]    Plaintiff alleges that the Secretary also charged Jimmy Arnold and Kendra Clements. Id. The record does not identify these individuals.

any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Pursuant to Section 3614(a), the government may bring civil suit when it has reasonable cause to believe that any person or group of persons "is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by [the FHA]." 42 U.S.C. § 3614(a).[6] The existence of a pattern or practice of discrimination is a predicate to the government's ability to maintain suit. See United States v. Garden Homes Mgmt., Corp., 156 F. Supp.2d 413, 420 (D.N.J. 2001). To show a pattern or practice of discrimination, the government must demonstrate by a preponderance of the evidence that discrimination was defendants' standard operating procedure. See Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 336 (1977). Isolated, accidental or sporadic instances of discrimination are insufficient to establish a pattern or practice of discrimination. Id. at 336. No threshold number of incidents must occur before the government can bring suit. United States v. Habersham Props., Inc., 319 F.Supp.2d 1366, 1372-73 (N.D. Ga. 2003) (citing United States v. Bob Lawrence Realty, Inc., 474 F.2d 115, 123-24 (5th Cir. 1973)).

The AIMCO entities contend that as a matter of law, the United States cannot state a pattern and practice claim based solely on the acts of *one* employee at *one* property which they manage. Specifically, defendants contend that they manage about 1500 properties, and that the government cannot show that discriminatory conduct by one employee at one property constitutes their standard

---

[6] Also under Section 3614(a), the government may bring civil suit when it has reasonable cause to believe that "any group of persons has been denied any of the rights granted by [the FHA] and such denial raises an issue of general public importance . . . ." 42 U.S.C. § 3614(a). The AIMCO entities do not challenge the United States' claim that they have violated this provision.

operating procedure. See Memorandum In Support Of The AIMCO Entities' Motion To Dismiss ("AIMCO Entities' Memorandum") (Doc. #63) filed October 16, 2008 at 9-10, 14.

Defendants' argument misses the boat. To the extent Sturdevant acted as their agent, defendants may be vicariously liable for her actions taken within the scope of that agency. In United States v. Habersham Properties, Inc., the government sued the corporate owner of an apartment complex, its property management company and the on-site manager who worked for the property management company and allegedly engaged in a pattern or practice of discrimination at the apartment complex. The apartment complex was the corporate owner's only asset. See Habersham Props., 319 F.Supp.2d at 1369. The property management company managed 26 other residential complexes, but the pattern and practice allegations did not implicate the other properties. See id. Defendants sought summary judgment, arguing that the evidence was insufficient to establish that they had a standard operating procedure of discrimination. The district court disagreed, finding that construed in a light most favorable to the government, the evidence suggested that the on-site manager engaged in a pattern or practice of race discrimination. See id. at 1373-74. The corporate owner argued that it was not liable because it did not employ the on-site manager. The district court, however, ruled that because an agency relationship existed between the property owner and the property management company, the property owner could be held liable for the conduct of an employee of the property management company. See id. at 1375. The property owner and property management company asserted that they were not liable because they acted in good faith to prevent discrimination and did not know about, authorize or ratify the alleged discriminatory conduct. The district court again disagreed, finding that the FHA imposes liability without fault in accordance with traditional agency principles. See id. at 1376 (citing Meyer v. Holley, 537 U.S. 280, 285-86

(2003)). Because the on-site manager acted within the scope of her employment in interacting with applicants and making judgments regarding applicants, the district court found that it was appropriate to hold the property owner and property management company vicariously liable for her actions. See id.

Here, the government alleges that Sturdevant engaged in a pattern or practice of discrimination at the Apartments, and that she did so while acting as an agent for the AIMCO entities. Whether a pattern or practice of discrimination exists is a question of fact, and each case must turn on its own facts. See United States v. Balistrieri, 981 F.2d 916, 930 (7th Cir. 1992); Garden Homes, 156 F. Supp.2d at 420. Courts have uniformly refused to establish a minimum threshold number of incidents which must occur before the government can bring a pattern or practice claim. See, e.g., Habersham, 319 F. Supp.2d at 1372-73; Garden Homes, 156 F. Supp.2d at 420. To the extent Sturdevant acted as an agent for the AIMCO entities, it appears that they may be vicariously liable for her actions. See, e.g., Habersham, 319 F. Supp.2d at 1376; United States v. Youritan Constr. Co., 370 F. Supp. 643, 649 (N.D. Cal. 1973). Defendants have not shown that because they manage 1,500 properties, they cannot be held vicariously liable for a pattern and practice of discrimination which occurred at one of the properties. The Court will not dismiss the United State's claim on this ground.[7]

**II.  Vicarious Liability**

CPT II asserts that the government has not alleged facts sufficient to support a claim that

---

[7] CPT II seeks to dismiss the pattern or practice claim for the reasons stated by the AIMCO entities. See Defendant Central Park Towers II, L.P.'s Motion To Dismiss Plaintiff's First Amended Complaint (Doc. #65) filed October 24, 2008. For the same reasons, the Court overrules CPT II's motion to dismiss the pattern or practice claim.

Sturdevant acted as its agent. Specifically, CPT II contends that the government states only legal conclusions and does not allege facts which show (1) CPT II's consent for Sturdevant to act as its agent; (2) Sturdevant's consent to act on behalf of CPT II; (3) formation of the agency relationship; or (4) control which CPT II exercised over its purported agent. See Memorandum In Support Of Defendant Central Park Towers II, L.P.'s Motion To Dismiss Plaintiff's First Amended Complaint (Doc. #66) filed October 24, 2008 at 5.

As discussed, the FHA imposes liability in accordance with traditional agency principles. See Habersham, 319 F. Supp.2d at 1376 (citing Meyer, 537 U.S. at 285-86). Courts have generally found that property owners have a non-delegable duty to not discriminate and that they will be held vicariously liable for discriminatory actions of their rental agents. Alexander v. Riga, 208 F.3d 419, 433 (3d Cir. 2000);[8] Balistrieri, 981 F.2d at 930 (property owner liable for wrongful acts of rental agent committed within scope of authority). Here, the government alleges that (1) CPT II, a subsidiary of AIMCO Properties, L.P., owned the Apartments; (2) AIMCO and/or AIMCO Properties, L.P. managed the Apartments;[9] (3) NHPMN Management, LLC., another subsidiary of AIMCO Properties, L.P., served as property management company for the Apartments; (4) AIMCO and/or AIMCO Properties, L.P. employed Sturdevant; (5) in the course of her employment, Sturdevant managed, operated and/or rented dwelling units at the Apartments; and (6) CPT II,

---

[8] In Alexander, the Third Circuit found that a property owner may avoid vicarious liability by making "active anti-discrimination efforts." Id. at 434. The Third Circuit did not define those efforts, but suggested that an owner must make a good faith attempt to deter and detect illicit housing practices. See id. at 433-34.

[9] The Government alleges that AIMCO Properties, L.P. owned substantially all of AIMCO's assets and managed the daily operations of AIMCO's business and assets. See First Amended Complaint (Doc. #51) ¶ 5.

AIMCO, AIMCO Properties, L.P. and/or NHPMN Management, LLC., exercised control or had the power to exercise control over Sturdevant. See First Amended Complaint (Doc. #51) ¶¶ 4, 5, 7, 9. These facts are sufficient to state a plausible claim that CPT II is vicariously liable for Sturdevant's conduct. See, e.g., Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008) (plausibility and fair notice pleading requirements depend on context of case); Habersham, 319 F. Supp.2d at 1375-76 (property owner liable for conduct of employee of property management company); see also Shawnee State Bank v. N. Olathe Indus. Park, Inc., 228 Kan. 231, 236-37, 613 P.2d 1342, 1347 (1980) (discussing actual and apparent agencies). The Court will not dismiss the United States' claim on this ground.

**IT IS THEREFORE ORDERED** that the Motion To Dismiss Of Defendants The Aimco Entities (Doc. #62) filed October 16, 2008 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that Defendant Central Park Towers II, L.P.'s Motion To Dismiss Plaintiff's First Amended Complaint (Doc. #65) filed October 24, 2008 be and hereby is **OVERRULED.**

Dated this 1st day of May, 2009 at Kansas City, Kansas.

                                                s/Kathryn H. Vratil
                                                Kathryn H. Vratil
                                                United States District Judge