DJW/2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**

       **Plaintiff,**      **CIVIL ACTION**

**v.**                 **Case No. 07-2233-KHV-DJW**

**STACY STURDEVANT, et al.,**

       **Defendants.**

## MEMORANDUM AND ORDER DENYING REQUEST FOR RULE 35 EXAMS, GRANTING REQUEST TO AMEND THE SCHEDULING ORDER AND ENTERING AMENDED SCHEDULING ORDER

Pending before the Court is Defendants AIMCO Entities' Unopposed Motion to Compel Independent Medical Examinations and For Enlargement of Time and Memorandum in Support (doc. 160) filed by Defendants AIMCO Properties, L.P., AIMCO-GP, Inc., Apartment Investment and Management Company, NHPMN Management LLC, and NHP Management Company (collectively, the "AIMCO Defendants"). Having reviewed the Motion, the Supplement to Defendants AIMCO Entities' Unopposed Motion to Compel Independent Medical Examinations and For Enlargement of Time (doc. 164), and the relevant law, the Court finds that the Motion should be granted in part and denied in part.

**I.  BACKGROUND**

A detailed background of this case is necessary to better understand AIMCO Defendants' Motion and the Court's Memorandum and Order.

This case involves alleged violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619

("Fair Housing Act") at the Central Park Towers Apartments between January 2003 and July 2005.[1] Plaintiff United States filed this action seeking to enforce the Fair Housing Act.[2]  Plaintiff alleges that Melissa Kothe was employed by Defendant AIMCO Properties, L.P. from March 2004 until May 3, 2005, as a resident services coordinator at the Central Park Towers Apartments.[3]  Plaintiff also alleges that when interviewed by two investigators from the United States Department of Housing and Urban Development ("HUD"), Ms. Kothe told the investigators that she had witnessed Defendant Stacy Sturdevant using inappropriate and disrespectful language toward a tenant.[4] Plaintiff further alleges that Defendant Stacy Sturdevant overheard Ms. Kothe tell a co-worker that Ms. Kothe had advised a tenant to contact an attorney or HUD, which angered Defendant Stacy Sturdevant.[5]  According to Plaintiff, Defendant Stacy Sturdevant falsely accused Ms. Kothe of falsifying a document because Ms. Kothe cooperated with the HUD investigators and advised a tenant to contact HUD or an attorney.[6]  Plaintiff claims that Ms. Kothe was suspended and eventually fired because of Defendant Stacy Sturdevant's false accusation.[7]

---

[1] First Am. Compl. (doc. 51) at ¶¶ 1 and 4.

[2] *Id.* at ¶ 1.

[3] *Id.* at ¶ 12.

[4] *Id.* at ¶¶ 13-14.

[5] *Id.* at ¶¶ 16-17.

[6] *Id.* at. ¶ 18.

[7] First Am. Compl. (doc. 51) at ¶ 19.

Plaintiff contends that Ms. Kothe then filed a timely complaint with HUD under the Fair Housing Act, 42 U.S.C. § 3610(a), alleging a violation of 42 U.S.C. § 3617.[8] According to Plaintiff, the Secretary of HUD then conducted and completed an investigation of the complaint filed by Ms. Kothe and eventually determined that reasonable cause exists to believe that discriminatory housing practices occurred.[9] The Secretary of HUD then issued a Charge of Discrimination, which Ms. Kothe elected to have resolved in a civil action filed in federal district court, pursuant to 42 U.S.C. § 3612(a).[10] Following Ms. Kothe's election, the Secretary of HUD authorized the Attorney General to commence a civil action, pursuant to 42 U.S.C. § 3612(o).[11] Plaintiff United States then commenced this lawsuit.

Plaintiff's First Amended Complaint contains two counts. The first count focuses on the injuries suffered by Ms. Kothe due to the defendants' alleged violations of the Fair Housing Act. Plaintiff alleges that all of the defendants violated the Fair Housing Act, 42 U.S.C. § 3617, by coercing, intimidating, threatening, or interfering with Ms. Kothe's exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by the Fair Housing

---

[8] *Id.* at ¶ 20.

[9] *Id.* at ¶ 21.

[10] *Id.* at ¶¶ 22-23.

[11] *Id.* at ¶ 25.

Act.[12]  Plaintiff claims that Ms. Kothe suffered damages, including economic loss and emotional distress, as a result of the defendants' conduct.[13]

Plaintiff's second count focuses on injuries suffered by an unknown group of victims of the defendants' alleged pattern or practice of race discrimination, in violation of the Fair Housing Act. In support of its pattern or practice of race discrimination claim, Plaintiff alleges that Defendant Stacy Sturdevant, while acting as the manager of the Central Park Tower Apartments, openly displayed and distributed racially hostile materials, symbols and items, such as hangman's nooses, on the premises of the Central Park Tower Apartments.[14]  Plaintiff also alleges that Defendant Stacy Sturdevant, while acting as the manager of the Central Park Tower Apartments, openly and pervasively used racially derogatory and hostile remarks about African-American residents, to African-American residents, and to persons who associated with African-American residents of the Central Park Tower Apartments.[15]  Plaintiff further alleges that Defendant Stacy Sturdevant, while acting as the manager of the Central Park Tower Apartments, treated the white residents more favorably than the African-American residents in the terms and conditions of their residency.[16]  According to Plaintiff, the AIMCO Defendants as well as Defendant Central Park Towers II, L.P. all knew or should have known about Defendant Stacy Sturdevant's conduct.[17]

---

[12] *Id.* at ¶ 27.

[13] First Am. Compl. (doc. 51) at ¶ 29.

[14] *Id.* at ¶ 32.

[15] *Id.* at ¶ 33.

[16] *Id.* at ¶ 34.

[17] *Id.* at ¶ 36.

In connection with its pattern or practice of race discrimination claim, Plaintiff alleges that "[p]ersons who may have been the victims of Defendants' discriminatory housing practices are aggrieved person as defined in [the Fair Housing Act,] 42 U.S.C. § 3602(i), and may have suffered injuries as a result of the conduct described" in the First Amended Complaint.[18] Plaintiff prays that the court "[a]ward[] monetary damages, pursuant to 42 U.S.C. §§ 3612(o)(3) and 3614(d)(1)(B), to all persons harmed by the Defendants' discriminatory practices."[19]

AIMCO Defendants' Motion concerns this group of people whom Plaintiff alleges are "aggrieved persons" under the Fair Housing Act.[20] According to AIMCO Defendants, "Plaintiff identified in its Amended Initial Disclosures . . . thirty-five (35) individuals whom it contended were 'aggrieved persons' on whose behalf [Plaintiff] intended to seek damages from Defendants."[21] AIMCO Defendants further claim, "At that time, Plaintiff stated its intent to later identify a subset of those alleged aggrieved persons for whom it would present expert testimony in support of a claim for damages above and beyond 'garden variety' damages."[22] AIMCO Defendants state that Plaintiff, in its recent expert disclosures, identified 19 alleged aggrieved persons on whose behalf Plaintiff

---

[18] *Id.* at ¶ 39.

[19] First Am. Compl. (doc. 51) at 11.

[20] Under the Fair Housing Act, 42 U.S.C. § 3602(i), the term "'aggrieved person' includes any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur."

[21] Defs. AIMCO Entities' Unopposed Mot. to Compel Independent Medical Examinations and for Enlargement of Time and Mem. in Supp. (doc. 160) at ¶ 1.

[22] *Id.*

5

will be seeking something more than "garden variety" emotional distress damages.[23]  Plaintiff submitted 19 expert reports on May 29, 2009.[24]

AIMCO Defendants then attempted to contact 18 of these individuals to set up a time when AIMCO Defendants' own forensic psychiatrist could evaluate the alleged aggrieved persons.[25]  AIMCO Defendants claim that they have been unable to set up these evaluation appointments because these individuals either will not answer telephone calls, return telephone calls, or discuss the case with them.[26]  Thus, AIMCO Defendants filed their Motion seeking an extension of their deadline to designate their expert witness(es) and produce their expert report(s) and asking the court to enter an order compelling these individuals to submit to independent medical examinations pursuant to Fed. R. Civ. P. 35.  AIMCO Defendants state that this Motion is not opposed.

## II. STANDARD

Fed. R. Civ. P. 35 allows the court to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination . . . .  The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control."[27]  "The purpose of the 'person in the custody or under the legal control of a party' language

---

[23] *Id.* at ¶ 2.

[24] *Id.*

[25] *Id.* at ¶ 5.  AIMCO Defendants are not planning to have one of the individuals evaluated because it appears that this individual's severe mental disabilities have effectively precluded him from communicating any coherent facts from which Plaintiff's expert could base any opinion regarding the cause of his mental condition.  *See* Defs. AIMCO Entities' Unopposed Mot. to Compel Independent Medical Examinations and for Enlargement of Time and Mem. in Supp. (doc. 160) at n. 2.

[26] *Id.* at 5.

[27] Fed. R. Civ. P. 35(a)(1).

6

in Rule 35 is to provide a court with a vehicle to order a parent or guardian suing for personal injuries on behalf of a minor to produce the minor for examination."[28]

## III.   RULE 35 EXAMS

Although this Motion is unopposed, the Court must consider the Motion on its merits. As of the date of this Memorandum and Order, Plaintiff United States is the only plaintiff in this case. AIMCO Defendants ask this Court to enter an order compelling 18 individuals to each submit to an independent medical examination pursuant to Rule 35. However, AIMCO Defendants fail to cite any case law which demonstrates that these individuals are parties to this action who are subject to a Rule 35 exam. In fact, the Court notes that the Fair Housing Act, which empowers the Attorney General to commence an action on behalf of aggrieved persons, specifically provides such aggrieved persons a mechanism to intervene in the case and, thus, become parties to the action.[29] To date, none of the alleged aggrieved persons have sought to intervene in this case.

AIMCO Defendants also fail to cite any case law which would support a conclusion that these individuals are "in the custody or under the legal control" of Plaintiff United States such that they are subject to a Rule 35 exam. Without such legal authority, the Court cannot conclude that it has jurisdiction to compel these alleged aggrieved persons to submit to a Rule 35 exam. Accordingly, the Court will deny AIMCO Defendant's request for a motion compelling these individuals to submit to Rule 35 exams without prejudice. AIMCO Defendants may refile their motion, which should include specific legal authority for the requested Rule 35 exams.

## IV.   SECOND AMENDED SCHEDULING ORDER

---

[28] *Lewis v. Herrman's Excavating, Inc.*, 200 F.R.D. 657, 661 (D. Kan. 2001) (citation omitted).

[29] 42 U.S.C. § 3612(o)(2) ("Any aggrieved person with respect to the issues to be determined in a civil action under this subsection may intervene as of right in that civil action.").

The Court has considered AIMCO Defendants' request to extend the deadline for the defendants to designate their expert witness(es) and to produce their expert report(s), and will grant that request as unopposed. The Scheduling Order (doc. 92), as previously amended by the Court's Memorandum and Order Granting in Part Motion to Amend and Entering Amended Scheduling Order (doc. 132), is hereby further amended as follows:

> Disclosures required by Fed. R. Civ. P. 26(a)(2), including reports from retained experts, are due from Defendants by **August 31, 2009**. Disclosures and reports by any rebuttal experts are due by **September 30, 2009**.

## V. CONCLUSION

For the foregoing reasons, the Court will deny without prejudice AIMCO Defendants' request to compel the alleged aggrieved persons identified in their Motion to each submit to a Rule 35 exam. AIMCO Defendants may refile their motion to provide the Court with sufficient legal authority for the requested Rule 35 exams. The Court will grant AIMCO Defendants' request to move the deadline for defendants to designate expert witness(es) and produce expert report(s) to August 31, 2009. The Court will also move the deadline to disclose rebuttal experts.

**IT IS THEREFORE ORDERED** that Defendants AIMCO Entities' Unopposed Motion to Compel Independent Medical Examinations and For Enlargement of Time and Memorandum in Support (doc. 160) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that AIMCO Defendants' request to compel the alleged aggrieved persons identified in their Motion to each submit to a Rule 35 exam is denied without prejudice. AIMCO Defendants may refile their motion to provide the Court with sufficient legal authority for the requested Rule 35 exams.

**IT IS FURTHER ORDERED** that the Scheduling Order (doc. 92), as previously amended by the Court's Memorandum and Order Granting in Part Motion to Amend and Entering Amended Scheduling Order (doc. 132), is hereby further amended as follows:

Disclosures required by Fed. R. Civ. P. 26(a)(2), including reports from retained experts, are due from Defendants by **August 31, 2009**. Disclosures and reports by any rebuttal experts are due by **September 30, 2009**.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 6th day of July 2009.

s/ David J. Waxse<br>
David J. Waxse<br>
U.S. Magistrate Judge

cc:   All counsel and *pro se* parties