DJW/2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | CIVIL ACTION |
| ) | |
| v. ) | Case No. 07-2233-KHV-DJW |
| ) | |
| **STACY STURDEVANT, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Renewed Unopposed Motion to Compel Independent Medical Examinations (doc. 175) filed by Defendants AIMCO Properties, L.P., AIMCO-GP, Inc., Apartment Investment and Management Company, NHPMN Management LLC, and NHP Management Company (collectively, "AIMCO Defendants") and Central Park Towers II, L.P. ("CPT II"). Having reviewed the Motion, the memorandum in support of the Motion (doc. 176), Plaintiff's response to the Motion (doc. 177), and the relevant law, the Court finds that the Motion should be granted.

## I.    BACKGROUND

This is AIMCO Defendants' second motion for Rule 35 exams of 18 allegedly aggrieved persons. The Court denied the first motion without prejudice to refiling to provide the Court with sufficient legal authority for the requested Rule 35 exams. AIMCO Defendants, joined now by Defendant CPT II, have refiled their motion and provided the Court with the requested legal authority for the Rule 35 exams.

However, the Motion was not served on the 18 allegedly aggrieved persons whom AIMCO Defendants and Defendant CPT II ask to be examined under Rule 35. Thus, the Court entered a

Notice and Order to Show Cause (doc. 199) why the Motion should not be denied for failure to satisfy the notice requirements under Rule 35.  AIMCO Defendants and Defendant CPT II filed a response (doc. 212) to the Notice and Order to Show Cause, wherein they pointed out that 2 days after the entry of the Court's Notice and Order to Show Cause they served true and accurate copies of their Motion and memorandum in support of their Motion on the 18 allegedly aggrieved persons. The Court therefore accepts AIMCO Defendants' and Defendant CPT II's response to the Notice and Order to Show Cause and finds that the Motion should not be denied for failure to satisfy the notice requirements under Rule 35.  The Court will therefore determine the Motion on its merits.

As noted in the Court's previous Order (doc. 171) denying without prejudice AIMCO Defendants' first motion seeking Rule 35 exams, a detailed background of this case is necessary to better understand the Motion and the Court's Order.  Thus, the Court sets out that background again in this Order.

This case involves alleged violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619 ("Fair Housing Act") at the Central Park Towers Apartments between January 2003 and July 2005.[1] Plaintiff United States filed this action seeking to enforce the Fair Housing Act.[2]  Plaintiff alleges that Melissa Kothe was employed by Defendant AIMCO Properties, L.P. from March 2004 until May 3, 2005, as a resident services coordinator at the Central Park Towers Apartments.[3]  Plaintiff also alleges that when interviewed by two investigators from the United States Department of

---

[1] First Am. Compl. (doc. 51) at ¶¶ 1 and 4.

[2] *Id.* at ¶ 1.

[3] *Id.* at ¶ 12.

2

Housing and Urban Development ("HUD"), Ms. Kothe told the investigators that she had witnessed Defendant Stacy Sturdevant using inappropriate and disrespectful language toward a tenant.[4] Plaintiff further alleges that Defendant Stacy Sturdevant overheard Ms. Kothe tell a co-worker that Ms. Kothe had advised a tenant to contact an attorney or HUD, which angered Defendant Stacy Sturdevant.[5] According to Plaintiff, Defendant Stacy Sturdevant falsely accused Ms. Kothe of falsifying a document because Ms. Kothe cooperated with the HUD investigators and advised a tenant to contact HUD or an attorney.[6] Plaintiff claims that Ms. Kothe was suspended and eventually fired because of Defendant Stacy Sturdevant's false accusation.[7]

Plaintiff contends that Ms. Kothe then filed a timely complaint with HUD under the Fair Housing Act, 42 U.S.C. § 3610(a), alleging a violation of 42 U.S.C. § 3617.[8] According to Plaintiff, the Secretary of HUD then conducted and completed an investigation of the complaint filed by Ms. Kothe and eventually determined that reasonable cause exists to believe that discriminatory housing practices occurred.[9] Plaintiff alleges that the Secretary of HUD then issued a Charge of Discrimination, which Ms. Kothe elected to have resolved in a civil action filed in federal district court, pursuant to 42 U.S.C. § 3612(a).[10] Following Ms. Kothe's election, the Secretary of HUD

---

[4] *Id.* at ¶¶ 13-14.

[5] *Id.* at ¶¶ 16-17.

[6] *Id.* at. ¶ 18.

[7] First Am. Compl. (doc. 51) at ¶ 19.

[8] *Id.* at ¶ 20.

[9] *Id.* at ¶ 21.

[10] *Id.* at ¶¶ 22-23.

3

allegedly authorized the Attorney General to commence a civil action, pursuant to 42 U.S.C. § 3612(o).[11] Plaintiff United States then commenced this lawsuit.

Plaintiff's First Amended Complaint contains two counts. The first count focuses on the injuries suffered by Ms. Kothe due to the defendants' alleged violations of the Fair Housing Act. Plaintiff alleges that all of the defendants violated the Fair Housing Act, 42 U.S.C. § 3617, by coercing, intimidating, threatening, or interfering with Ms. Kothe's exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act.[12] Plaintiff claims that Ms. Kothe suffered damages, including economic loss and emotional distress, as a result of the defendants' conduct.[13]

Plaintiff's second count focuses on injuries suffered by an unknown group of victims of the defendants' alleged pattern or practice of race discrimination in violation of the Fair Housing Act. In support of its pattern or practice of race discrimination claim, Plaintiff alleges that Defendant Stacy Sturdevant, while acting as the manager of the Central Park Tower Apartments, openly displayed and distributed racially hostile materials, symbols and items, such as hangman's nooses, on the premises of the Central Park Tower Apartments.[14] Plaintiff also alleges that Defendant Stacy Sturdevant, while acting as the manager of the Central Park Tower Apartments, openly and pervasively used racially derogatory and hostile remarks about African-American residents, to

---

[11] *Id.* at ¶ 25.

[12] *Id.* at ¶ 27.

[13] First Am. Compl. (doc. 51) at ¶ 29.

[14] *Id.* at ¶ 32.

African-American residents, and to persons who associated with African-American residents of the Central Park Tower Apartments.[15] Plaintiff further alleges that Defendant Stacy Sturdevant, while acting as the manager of the Central Park Tower Apartments, treated the white residents more favorably than the African-American residents in the terms and conditions of their residency.[16] According to Plaintiff, the AIMCO Defendants as well as Defendant Central Park Towers II, L.P. all knew or should have known about Defendant Stacy Sturdevant's conduct.[17]

In connection with its pattern or practice of race discrimination claim, Plaintiff alleges that "[p]ersons who may have been the victims of Defendants' discriminatory housing practices are aggrieved person as defined in [the Fair Housing Act,] 42 U.S.C. § 3602(i), and may have suffered injuries as a result of the conduct described" in the First Amended Complaint.[18] Plaintiff prays that the court "[a]ward[] monetary damages, pursuant to 42 U.S.C. §§ 3612(o)(3) and 3614(d)(1)(B), to all persons harmed by the Defendants' discriminatory practices."[19]

AIMCO Defendants' and Defendant CPT II's Motion concerns this group of people whom Plaintiff alleges are "aggrieved persons" under the Fair Housing Act (the "Allegedly Aggrieved Persons"). According to AIMCO Defendants and Defendant CPT II, "Plaintiff identified in its Amended Initial Disclosures . . . thirty-five (35) individuals whom it contended were 'aggrieved

---

[15] *Id.* at ¶ 33.

[16] *Id.* at ¶ 34.

[17] *Id.* at ¶ 36.

[18] *Id.* at ¶ 39. Under the Fair Housing Act, 42 U.S.C. § 3602(i), the term "'aggrieved person' includes any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur."

[19] First Am. Compl. (doc. 51) at p. 11.

persons' on whose behalf [Plaintiff] intended to seek damages from Defendants."[20]  AIMCO Defendants and Defendant CPT II further claim, "At that time, Plaintiff stated its intent to later identify a subset of those alleged aggrieved persons for whom it would present expert testimony in support of a claim for damages above and beyond 'garden variety' damages."[21]  AIMCO Defendants and Defendant CPT II state that Plaintiff, in its recent expert disclosures, identified 19 Allegedly Aggrieved Persons on whose behalf Plaintiff will be seeking something more than "garden variety" emotional distress damages.[22]  These 19 Allegedly Aggrieved Persons made themselves available to Plaintiff's expert for examination.  Plaintiff then submitted 19 expert reports on May 29, 2009.[23]

AIMCO Defendants then attempted to contact 18 of these Allegedly Aggrieved Persons to set up a time when AIMCO Defendants' own forensic psychiatrist could evaluate the Allegedly Aggrieved Persons.[24]  AIMCO Defendants claim that they have been unable to set up these

---

[20] Defs. AIMCO Entities' Unopposed Mot. to Compel Independent Medical Examinations and for Enlargement of Time and Mem. in Supp. (doc. 160) at ¶ 1 (the "First Motion").  AIMCO Defendants and Defendant CPT II incorporated the factual and legal substance of the First Motion in their renewed Motion (doc. 175) by reference.  *See* Defs.' Renewed Unopposed Mot. to Compel Independent Medical Examinations (doc. 175) at 2.

[21] First Motion at ¶ 1.

[22] *Id.* at ¶ 2.

[23] *Id.*

[24] *Id.* at ¶ 5.  AIMCO Defendants and Defendant CPT II are not planning to have one of the Allegedly Aggrieved Persons evaluated because it appears that this individual's severe mental disabilities have effectively precluded him from communicating any coherent facts from which Plaintiff's expert could base any opinion regarding the cause of his mental condition.  *See* First Motion at p. 2 n. 2.

6

evaluation appointments because these Allegedly Aggrieved Persons either will not answer telephone calls, return telephone calls, or discuss the case with them.[25]

According to AIMCO Defendants and Defendant CPT II, several of the 18 examinations have already been conducted by agreement of the parties and the Allegedly Aggrieved Persons.[26] AIMCO Defendants and Defendant CPT II filed this renewed Motion asking the Court to enter an order compelling the remaining Allegedly Aggrieved Persons to submit to independent medical examinations pursuant to Rule 35 of the Federal Rules of Civil Procedure. AIMCO Defendants and Defendant CPT II state that this Motion is not opposed by Plaintiff. However, Plaintiff filed a response to the Motion clarifying that while it does not oppose the Motion insofar as it seeks to have these 18 Allegedly Aggrieved Persons ordered to submit to Rule 35 exams, Plaintiff does object to any argument that these 18 Allegedly Aggrieved Persons are under Plaintiff's "legal control."[27]

## II.  STANDARD

Rule 35 of the Federal Rules of Civil Procedure allows the court to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination . . .. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control."[28] The order requiring a physical or mental examination "may be made only on motion for good cause and on notice to all parties and the person to be examined; and must specify the time, place, manner, conditions, and scope of the examination, as well as the

---

[25] *Id.* at 5.

[26] Defs.' Renewed Unopposed Mot. to Compel Independent Medical Examinations (doc. 175) at p. 2 n. 1.

[27] United States' Resp. to the Defs.' Mem. of Law in Supp. of Mot. to Compel Independent Medical Exams (doc. 177).

[28] Fed. R. Civ. P. 35(a)(1).

7

person or persons who will perform it."[29]  "The granting or denying of a motion for a physical examination rests in the sound discretion of the trial court."[30]  Rule 35 must be liberally construed in favor of granting discovery.[31]

Before ordering Rule 35 examinations of the 18 Allegedly Aggrieved Persons, the court must first decide whether AIMCO Defendants and Defendant CPT II have adequately demonstrated that the mental condition of each of the 18 Allegedly Aggrieved Persons is "in controversy" and that "good cause" exists to conduct the requested examinations.[32]  As previously stated by court's in this district, Rule 35 "is consciously designed to be somewhat restrictive to guard against the use of requests for mental examinations as a tool for harassment, intimidation or delay in what courts have described as the 'garden variety' cases."[33]

## III. RULE 35 EXAMS

In light of the allegations in this case (discussed in detail in the Background section of this Memorandum and Order), the Court finds that Plaintiff has placed the mental condition of each of the 18 Allegedly Aggrieved Persons in controversy within the meaning of Rule 35 and that good cause exists to conduct the requested examinations.  The Court notes that Plaintiff specifically

---

[29] Fed. R. Civ. P. 35(a)(2)(A) and (B).

[30] *Jones v. Greyhound Lines, Inc.*, No. 08-1185-MLB, 2009 WL 1650264, at *3 (D. Kan. June 12, 2009) (citations omitted).

[31] *Id.* (citations omitted).

[32] *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964) ("Rule 35 . . . requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination . . . has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause'. . ..").

[33] *See e.g.*, *Greenhorn v. Marriott Intern., Inc.*, 216 F.R.D. 649, 651 (D. Kan. 2003) (quoting *Thiessen v. General Electric Capital Corp.*, 178 F.R.D. 568, 570 (D. Kan. 1998))(quotations omitted).

admits it is seeking more than "garden variety" emotional distress damages on behalf of the Allegedly Aggrieved Persons. The Court also notes that Plaintiff does not oppose the Motion insofar as it seeks to compel Rule 35 exams of the Allegedly Aggrieved Persons, but rather Plaintiff opposes any argument that the Allegedly Aggrieved Persons are within Plaintiff's custody or under its legal control. The Court further notes that the Allegedly Aggrieved Persons made themselves available for examination by Plaintiff's expert(s). Finally, the Court concludes that AIMCO Defendants and Defendant CPT II could not fairly defend a claim for damages on behalf of the Allegedly Aggrieved Persons by merely cross-examining the Allegedly Aggrieved Persons and Plaintiff's expert(s) without Rule 35 mental examinations of the Allegedly Aggrieved Persons.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants AIMCO Defendants' and Defendant CPT II's Motion. The Allegedly Aggrieved Persons identified on Exhibit A attached to AIMCO Defendants' first motion to compel (doc. 160) who have not yet voluntarily submitted to a Rule 35 examination by AIMCO Defendants' expert are hereby ordered to do so. The examinations shall be conducted by C. Raymond Lake, M.D., at 10500 Barkley Street, Suite 226, Overland Park, Kansas 66212. AIMCO Defendants, Defendant CPT II, Plaintiff, and the Allegedly Aggrieved Persons shall work together to schedule the examinations to take place **within 20 days** of the date of the filing of this Order.

**IT IS THEREFORE ORDERED** that AIMCO Defendants' and Defendant CPT II's response to the Court's Notice and Order to Show Cause is sufficient, and Defendants' Renewed Unopposed Motion to Compel Independent Medical Examinations (doc. 175) shall not be denied for failure to satisfy the notice requirements under Rule 35.

**IT IS FURTHER ORDERED** that Defendants' Renewed Unopposed Motion to Compel Independent Medical Examinations (doc. 175) is granted.

**IT IS FURTHER ORDERED** that the Allegedly Aggrieved Persons identified on Exhibit A attached to AIMCO Defendants' first motion to compel (doc. 160) who have not yet voluntarily submitted to a Rule 35 examination by AIMCO Defendants' expert are hereby ordered to do so. The examinations shall be conducted by C. Raymond Lake, M.D., at 10500 Barkley Street, Suite 226, Overland Park, Kansas 66212. AIMCO Defendants, Defendant CPT II, Plaintiff, and the Allegedly Aggrieved Persons shall work together to schedule the examinations to take place **within 20 days** of the date of the filing of this Order.

**IT IS FURTHER ORDERED** that AIMCO Defendants and Defendant CPT II shall serve a copy of this Memorandum and Order on all Allegedly Aggrieved Persons who are to submit to a Rule 35 examination by Dr. Lake.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 17th day of August 2009.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:  All counsel and *pro se* parties