**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **Case No.  07-2233-KHV-DJW** |
| | ) | |
| **STACY STURDEVANT, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM AND ORDER</u>**

Pending before the Court is Plaintiff United States' Motion to Quash the AIMCO Defendants' Subpoena (doc. 327).  Plaintiff moves the Court, pursuant to Fed. R. Civ. P. 45(c)(3), for an Order quashing a subpoena directed to Dr. John Wisner, Jr.  The Motion is now fully briefed and is therefore ripe for consideration.  Having reviewed the Motion, the response to the Motion (doc. 359), Plaintiff's reply (doc. 375), and the relevant law, the Court finds that the Motion should be granted.

**I.      BACKGROUND**

The facts and allegations of this case are well-known to the parties and the Court and need not be repeated here.  For purposes of this Order, it suffices to say that this case involves alleged violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619 ("Fair Housing Act") at the Central Park Towers Apartments between January 2003 and July 2005.[1]  Plaintiff United States filed this action seeking to enforce the Fair Housing Act on behalf of certain alleged "aggrieved

---

[1] First Am. Compl. (doc. 51) at ¶¶ 1 and 4.

persons."[2]  Plaintiff seeks to recover monetary damages on behalf of the alleged aggrieved persons

for "garden variety" emotional distress and, in certain cases, for severe emotional distress.[3]

On September 14, 2009, Defendants AIMCO Properties, L.P., AIMCO-GP, Inc., Apartment

Investment and Management Company, NHPMN Management LLC, and NHP Management

Company (collectively, "AIMCO Defendants") filed their Notice of Intent to Serve Subpoena Duces

Tecum (doc. 298).  The Notice informed Plaintiff of the AIMCO Defendants' intent to serve a

subpoena duces tecum upon Dr. John Wisner, Jr. for documents created by Dr. Wisner during

interviews, examinations or other communications with certain alleged aggrieved persons

interviewed or examined by Dr. Wisner in connection with this action, as well as documents

provided to Dr. Wisner by any of those aggrieved persons.[4]

Plaintiff then filed its Motion to quash the subpoena directed at Dr. Wisner pursuant to Fed.

R. Civ. P. 45(c)(3).  The Court has reviewed the parties' arguments and it appears that the real issue

is whether Fed. R. Civ. P. 26(b)(4)(B) permits AIMCO Defendants to subpoena documents from Dr.

Wisner.

II.    STANDARDS

---

[2] *Id.* at ¶ 1.  Under the Fair Housing Act, 42 U.S.C. § 3602(i), the term "'aggrieved person' includes any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur."

[3] First Am. Compl. (doc. 51) at p. 11, ¶ 3.

[4] *See* Subpoena attached as Ex. A to Notice of Intent to Serve Subpoena Duces Tecum (doc. 298).

Under Fed. R. Civ. P. 45(c)(3), the Court, on timely motion, must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies."[5] At issue in this case is whether the documents sought from Dr. Wisner are protected under Fed. R. Civ. P. 26, which provides in pertinent part, "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."[6] Fed. R. Civ. P. 26 provides two exceptions to this rule. First, a party may access expert evaluations conducted pursuant to Fed. R. Civ. P. 35.[7] The parties appear to be in agreement that this exception is not applicable. Second, a party may discover facts known or opinions held by an expert who has been retained in anticipation of litigation and who is not expected to be called as a witness at trial, commonly referred to as a consulting expert, if the party seeking the information shows "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."[8] The parties disagree as to whether exceptional circumstances exist in this case.

As an initial matter, the Court notes that AIMCO Defendants do not appear to dispute that Dr. Wisner is a consulting expert under Fed. R. Civ. P. 26(b)(4)(B) or that Dr. Wisner's examinations of certain alleged aggrieved persons took place while he was acting in his capacity as a consulting expert under Fed. R. Civ. P. 26(b)(4)(B). Indeed, AIMCO Defendants state in their

---

[5] Fed. R. Civ. P. 45(c)(3)(A)(iii).

[6] Fed. R. Civ. P. 26(b)(4)(B).

[7] Fed. R. Civ. P. 26(b)(4)(B)(i).

[8] Fed. R. Civ. P. 26(b)(4)(B)(ii).

response to the Motion, "The United States correctly notes that absent 'extraordinary circum-stances,' a party may not discover facts or opinions held by another party's consulting experts. *See* Fed. R. Civ. P. 26(b)(4)(B). However, the circumstances of this case present 'extraordinary circumstances' justifying discovery . . . ."[9] In addition, AIMCO Defendants do not dispute Plaintiff's claims that Dr. Wisner was retained in anticipation of litigation and is not expected to be called as a witness at trial, that Dr. Wisner was never disclosed as a testifying expert, that he was retained by Plaintiff to help the Justice Department decide whether this is the type of case that justified spending time and resources preparing and presenting expert psychiatric testimony on behalf of the alleged aggrieved persons, and that Plaintiff has not released any information shared by Dr. Wisner to a third party.[10] Accordingly, the Court concludes that Fed. R. Civ. P. 26(b)(4)(B) is applicable here. Thus the Court must proceed to decide whether AIMCO Defendants are entitled to information from Dr. Wisner under the "exceptional circumstances" exception provided for in Fed. R. Civ. P. 26(b)(4)(B)(ii).

"The party seeking discovery from the [Rule 26(b)(4)(B)] expert 'carries a heavy burden in demonstrating the existence of exceptional circumstances.'"[11] Courts have commonly identified two situations where the exceptional circumstances exception applies.[12] The first situation "occurs 'where the object or condition observed by the [consulting] expert is no longer observable by an

---

[9] AIMCO Defs.' Resp. in Opp'n to United States' Mot. to Quash the AIMCO Defs.' Subpoena (doc. 359) at 5.

[10] United States' Mot. to Quash the AIMCO Defs.' Subpoena (doc. 327) at 1, 4-5.

[11] *Disidore v. Mail Contractors of Am., Inc.*, 196 F.R.D. 410, 415 (D. Kan. 2000) (quoting *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 503 (10th Cir.1980)).

[12] *Id.* at 417 (collecting and explaining cases dealing with the exceptional circumstances exception in Rule 26) (citations omitted).

expert of the party seeking discovery.'"[13]   The second situation occurs "where it is possible to

replicate expert discovery on a contested issue, but the costs would be judicially probative."[14]

AIMCO Defendants do not argue that either of these situations exist in this case.  Rather, AIMCO

Defendants rely on *Coates v. AC & S, Inc*. in support of their argument that exceptional

circumstances exist in this case.[15]

In *Coates*, the plaintiff alleged that Charles Coates died of peritoneal mesothelioma.[16]  After

Mr. Coates' death, tissue samples were taken and sent to both the plaintiff's and the defendants'

experts.[17]  The defendants sent the tissue samples to certain experts they designated as Fed. R. Civ.

P. 26(b)(4)(B) experts.[18]  The plaintiff then filed a motion seeking to depose the defendants' experts

or to obtain copies of any written reports, including test results and conclusions, of the defendants'

experts.[19]  The defendants' opposed the plaintiff's motion on the grounds that Fed. R. Civ. P.

26(b)(4)(B) prohibits the discovery of the opinions of experts who will not be called to testify at

trial.[20]

---

[13] *Id.* (quoting *Bank Brussels Lambert v. Chase Manhattan Bank*, N.A., 175 F.R.D. 34, 44 (S.D.N.Y. 1997)).

[14] *Bank Brussels Lambert*, 175 F.R.D. at 44 (citations omitted).

[15] 133 F.R.D. 109 (E.D. La. 1990).

[16] *Id.* at 110.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

The *Coates* court granted the plaintiff's motion to compel, concluding that "exceptional circumstances" under Fed. R. Civ. P. 26(b)(4)(B) existed.[21] In reaching this conclusion, the *Coates* court pointed out that it had previously entered an order in an effort to curtail the "shopping" of tissue samples by requiring all parties to file into the record the names and addresses of all persons or entities to whom the tissue samples were sent.[22] In that same order, the *Coates* court advised the parties that "shopping" of tissue samples would create "exceptional circumstances" under Fed. R. Civ. P. 26(b)(4)(B).[23] In deciding the plaintiff's motion to compel, the *Coates* court found that the defendants were "shopping" the tissue samples and thus concluded that exceptional circumstances existed.[24]

In response to the defendants' contention that sending the tissue samples to more than one expert did not necessarily mean they were shopping for a favorable opinion but rather demonstrated the difficulty of making a definitive diagnosis of mesothelioma, the *Coates* court emphasized that the goal of litigation is to seek the ultimate truth at issue and explained,

> If not for this order, both sides may continue to seek [] an expert who can render a definitive diagnosis favorable to their position in the case, and at trial, then, it would appear to the jury that the experts in support of each side's position are divided evenly. . . . The reality of the situation is that if a number of other experts have been consulted herein, but who could not make a definitive diagnosis, and these experts are not called as witnesses, then the jury could be mislead regarding the truth of plaintiff's condition. Considering the difficulty in diagnosing mesothelioma, the fact finder is entitled to know the extent of any disagreement of those whom a plaintiff

---

[21] *Coates*, 133 F.R.D. at 110.

[22] *Id.*

[23] *Id.*

[24] *Id.*

or defendant employed, unless we adopt the theory that in a civil case, as part of its trial tactics, a party has the right to suppress the truth.[25]

## III.  ANALYSIS

AIMCO Defendants argue that exceptional circumstances exist "because of the nature of the claims involved and the complexity of the evidence."[26]  In support of this argument, AIMCO Defendants claim that the facts in *Coates* are analogous to those existing in this case.  AIMCO Defendants argue that "[t]he diagnosis of psychiatric conditions and 'emotional distress' in this case is surely at least as nuanced as that for mesothelioma in *Coates*" and that just as in *Coates*, the jury in this case has to right to know the extent of any disagreements of the experts consulted by Plaintiff so that the jury can arrive at the truth.[27]

The Court has considered all of AIMCO Defendants' arguments and is not persuaded that exceptional circumstances exist here.  The Court disagrees with AIMCO Defendants' argument that the facts here are analogous to the facts in *Coates*.  Unlike the court in *Coates*, this Court never entered an order before the parties retained experts warning the parties that consulting more than one expert would amount to "exceptional circumstances" under Fed. R. Civ. P. 26(b)(4)(B).  In addition, it does not appear to the Court that Plaintiff has been "shopping" for a favorable opinion.  AIMCO Defendants have identified two experts consulted by Plaintiff.  The first, Dr. Wisner, was retained to help the Justice Department determine whether they should present expert psychiatric testimony on behalf of the alleged aggrieved persons in this case.  The second, Dr. Levy, was retained to conduct thorough examinations of the alleged aggrieved persons.  The Court concludes that this

---

[25] *Id.* at 111.

[26] AIMCO Defs.' Resp. in Opp'n to United States' Mot. to Quash the AIMCO Defs.' Subpoena (doc. 359) at 5.

[27] *Id.* at 6.

conduct does not amount to expert "shopping." Finally, the Court is not persuaded that the diagnosis of mesothelioma is similar to the assessment of emotional distress.

## IV.     CONCLUSION

For the foregoing reasons, the Court finds that AIMCO Defendants have not met their heavy burden of demonstrating exceptional circumstances under Fed. R. Civ. P. 26(b)(4)(B) that would entitle AIMCO Defendants to obtain documents from Plaintiff's consulting expert, Dr. Wisner. The Court therefore grants Plaintiff's Motion to quash the subpoena duces tecum directed at Dr. Wisner.

**IT IS THEREFORE ORDERED** that the United States' Motion to Quash the AIMCO Defendants' Subpoena (doc. 327) is granted.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 18th day of November 2009.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:     All counsel and *pro se* parties