**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | No. 07-2233-KHV |
| ) | |
| STACY STURDEVANT, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

The United States of America brings suit against Stacy Sturdevant, AIMCO Properties L.P. ("AIMCO Properties"), AIMCO-GP, Inc. ("AIMCO-GP"), Apartment Investment and Management Company d/b/a AIMCO ("AIMCO"), NHPMN Management, LLC ("NHPMN") and NHP Management Company ("NHP"). Plaintiff claims that defendants violated Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. §§ 3601 et seq.[1] See First Amended Complaint (Doc. #51) filed September 18, 2008. This matter comes before the Court on the Motion Of AIMCO Defendants For Partial Summary Judgment (Doc. #126) filed April 10, 2009. For reasons stated below, the Court sustains defendants' motion in part.

The AIMCO defendants seek summary judgment on the plaintiff's claim for injunctive relief because they no longer own the property at issue and no longer employ Sturdevant – the employee whose conduct provoked this lawsuit. Defendants argue that the injunctive relief which plaintiff

---

[1] The Court collectively refers to all defendants except Sturdevant as the "AIMCO entities."

seeks is therefore unavailable.[2] Plaintiff counters that summary judgment is premature because discovery is incomplete and material facts are in dispute.

**Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

---

[2] Specifically, the United States seeks to enjoin defendants, their officers, employees, agents, successors and all other persons in active concert or participation with them, from:

> (a) Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by Section 803, 804, 805, or 806 of the Fair Housing Act;
> (b) Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Ms. Kothe to the position she would have been in but for the Defendants' discriminatory conduct; and
> (c) Discriminating on the basis of race against any person in any aspect of the rental of dwellings, pursuant to 42 U.S.C. § 3614(d)(1)(A).

See First Amended Complaint (Doc. #51) at 11.

A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252. The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). And, while the Court views the record in a light most favorable to the party opposing summary judgment, the nonmoving party may not rest on its pleadings but must set forth specific facts. Id. The nonmoving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 250-251.

Under the Fair Housing Act, the Court can grant injunctive relief based on defendants' liability for past violations and the "vestiges of discrimination which remain." United States v. Scott, 809 F. Supp. 1404, 1408 (D. Kan. 1992). Injunctive relief is appropriate unless defendants show that no danger of current or future violations exists. Id. (citing United States v. DiMucci, 879 F.2d 1488 (7th Cir. 1989)). Injunctive relief must be narrowly tailored to remedy the harm shown. Garrison v. Baker Hughes Oilfield Operations, Inc., 287 F.3d 955, 961-62 (10th Cir. 2002).

**Facts**

The following material facts are uncontroverted, deemed admitted or – where controverted – viewed in the light most favorable to plaintiff.

Between January of 2003 and July of 2005, AIMCO Properties was the operating partnership for AIMCO, a publicly traded real estate investment trust. During that time, AIMCO-GP was a general partner of AIMCO Properties. NHP and NHPMN were subsidiaries of it AIMCO Properties. AIMCO Properties owned or managed a portfolio of 1499 apartment properties in 47 states, the District of Columbia and Puerto Rico.

During that time and until July 29, 2005, NHP and NHPMN managed the Central Park Towers Apartments ("CPT") in Kansas City, Kansas. NHPMN ceased managing CPT on July 29, 2005. Since then no AIMCO defendant has managed or owned any interest in CPT.

Stacy Sturdevant, who is white, was the apartment or "community" manager at CPT. She managed the day-to-day operations of the property, collecting and depositing rents, initiating evictions, issuing lease violation notices to tenants and interacting with them. During her employment, Sturdevant improved CPT financial performance and earned a raise.

Sturdevant believed that she worked for AIMCO. She authorized AIMCO to conduct a criminal background check before she started working at CPT and she believed that its chief executive officer had the authority to terminate her employment. All CPT paperwork bore AIMCO's name. CPT had its own email address (007135@aimco.com) which identified it as an AIMCO property, and CPT maintenance staff and leasing agents – including Sturdevant – wore uniforms and shirts emblazoned with "AIMCO."

CPT employees followed AIMCO policies and procedures and NHP employees received AIMCO employee handbooks. One month after she started working at CPT, Sturdevant received an employee handbook which she did not review completely. Sturdevant does not recall receiving any training materials regarding the FHA or fair-housing training while she worked at CPT, and

neither Melissa Kothe, the resident services coordinator at CPT, nor Regina (Hillmon) Thompson, her predecessor, received such materials. Also, Kothe did not receive a complete employee handbook.

Though the handbook prohibits employees from carrying weapons on CPT property, Sturdevant does not recall that prohibition. She owns a .9mm Glock semiautomatic handgun which she carried at CPT. Her supervisor, Denise Roemer, knew that she carried the weapon. Roemer visited CPT every one to three months and Sturdevant talked with her daily. Roemer never said anything to Sturdevant about carrying firearms at CPT.

Sturdevant displayed a hangman's noose in her truck and later in her office at CPT. In 2003 Rusty Fleming, an AIMCO regional vice president, asked her to take down the noose in her truck. Fleming counseled her about the noose but did not formally discipline her. Sturdevant believed that the noose was not a "big deal" and that Fleming asked her to take the noose down only until the National Association for the Advancement of Colored People stopped monitoring CPT. Fleming did not interview any tenants after he learned that Sturdevant had a noose at the property. He asked Chuck Hutchinson, another AIMCO employee, to follow up on the noose incident but does not know whether he did.[3] Sturdevant denies meeting with Hutchinson about the noose in her truck and states that nobody but Fleming discussed it with her. Sturdevant's employee file contains no record of the noose or Fleming's communications about it. Bill Kozey, who succeeded Fleming in July of 2003, was not told about Sturdevant or the noose. Sturdevant later displayed the noose in her office and she met there with Roemer during the time period the noose was displayed. From March of 2004 until April 27, 2005, nobody from AIMCO or the AIMCO companies asked Kothe or any

---

[3] The record does not specify Hutchinson's job title.

-5-

tenants at CPT about the noose.

Sturdevant passed out a KKK recruiting card at CPT. She also hired a maintenance man who had an iron cross tattooed on his forearm and who repeatedly called African-American tenants "stupid niggers." Sturdevant called many African-American tenants "niggers," and was abusive to them. Sturdevant refused or delayed making repairs on the basis of race, removed a water cooler that the tenants' association had installed at CPT, and attempted to evict African-American tenants under circumstances when she would not have evicted white tenants.

Charyle Mae Gordon complained to AIMCO managers about Sturdevant at least once, and Thompson (the resident services coordinator before Kothe) did so several times. On or about April 5, 2004, Sturdevant's performance review noted that tenants had complained about how she treated them. Between January 1, 2004, and April 27, 2005, CPT residents filed multiple complaints about Sturdevant with the United States Department of Housing and Urban Development ("HUD"). To investigate, AIMCO asked Sturdevant for her version of events and may or may not have interviewed CPT tenants or employees.

On April 22, 2005, Kothe told counsel for AIMCO that Sturdevant had verbally abused a tenant. Sturdevant had previously ordered Kothe to never tell a resident that they could talk to an attorney or make a complaint to HUD. On April 27, 2005, Sturdevant learned that Kothe had advised a tenant to contact HUD or an attorney. That same day Sturdevant accused Kothe of falsifying a document. AIMCO suspended Kothe immediately and fired her six days later.

On May 9, 2005, Kothe filed an EEOC complaint which informed the AIMCO defendants that Sturdevant had distributed a KKK recruiting card at CPT. On May 19, 2005, Sturdevant voluntarily took medical leave. On or about June 30, 2005, Scott Ladish, an off-duty officer with

the police department in Kansas City, Kansas, who also worked at CPT, told AIMCO that Sturdevant had given him a flyer supporting membership in the KKK. AIMCO fired Sturdevant on July 6, 2005.

The United States does not allege that any manager, supervisor or officer of the AIMCO defendants instructed Sturdevant to discriminate, or allege that race discrimination was a stated policy of any AIMCO defendant. The United States does not allege that discrimination occurred at any other AIMCO property, or that discrimination occurred at CPT after Sturdevant left. Also, the United States does not allege that other employees of defendants engaged in discrimination.

## **Analysis**

The AIMCO defendants assert that because they no longer own or manage CPT or employ Sturdevant, plaintiff cannot prove a danger of current or future violations, and that injunctive relief is therefore improper. See United States v. Di Mucci, 879 F.2d 1488, 1499 (7th Cir. 1989) (in FHA case, presumption in favor of injunctive relief when plaintiff alleges pattern and practice of discrimination; presumption rebuttable if no danger of current or future violations). Plaintiff responds that summary judgment is premature because discovery is ongoing and disputed issues of material fact preclude summary judgment.[4]

With respect to discovery, plaintiff intends to depose witnesses to determine the extent to which AIMCO employees knew or should have known about Sturdevant's conduct and what steps were or should have been taken to correct it. Plaintiff argues that AIMCO should be subject to

---

[4] Under Rule 56(f), a party who opposes a motion for summary judgment may offer affidavit testimony that it cannot present facts essential to justify its opposition. The Court may then (1) deny the motion, (2) order a continuance to enable affidavits to be obtained, or (3) issue any other just order.

injunctive relief if its employees knew or should have know about Sturdevant's conduct but did not take timely appropriate measures to stop it.

Plaintiff also argues that the following disputed facts preclude summary judgment: (1) which managerial employees at AIMCO were responsible for monitoring and correcting Sturdevant; (2) what and when AIMCO employees knew about discrimination at CPT; and (3) what steps were or should have been taken to address discrimination at CPT. Plaintiff contends that an injunction directing the AIMCO defendants to properly train its employees may be appropriate.[5] Finally, the government argues that defendants bear the burden to establish that injunctive relief is not necessary to prevent the wrong which occurred at CPT from being repeated at other properties.

In reply, defendants admit that facts are in dispute but argues that they are immaterial because the pleadings do not allege misconduct anywhere except by at CPT by Sturdevant. Defendants argue that a training component of injunctive relief is not required because no discrimination is ongoing, and the only allegation regarding future conduct is basically that someone, somewhere, might discriminate in the future.

Plaintiff does not explain how the injunctive relief which it seeks is necessary to protect it from the injury about which it complains. The complaint seeks to enjoin defendants from "(a) [c]oercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by Section 803, 804, 805, or 806 of the Fair Housing Act; (b) [f]ailing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Ms. Kothe to the position she would have been in

---

[5] The Complaint, however, seeks no such relief.

but for the Defendants' discriminatory conduct; and (c) [d]iscriminating on the basis of race against any person in any aspect of the rental of dwellings, pursuant to 42 U.S.C. § 3614(d)(1)(A)." See Doc. #51 at 11.

The briefs with respect to this motion address the first and third requests for injunctive relief, but not the second. Accordingly, the Court construes the motion for summary judgment as one which relates to only the first and third types of injunctive relief. To the extent that defendants seek summary judgment on the second request, the record contains insufficient factual information for the Court to conclude they are entitled to judgment as a matter of law. Specifically, the record contains no evidence whether the AIMCO defendants can restore Kothe, *as nearly as practicable,* to the position she would have been in but for the discriminatory conduct. While the AIMCO defendants no longer own or operate CPT, the record does not indicate whether they own other properties at which Kothe could work.

Courts have dismissed claims for injunctive relief when no danger of future violations exists. See Heights Cmty. Congress v. Hilltop Realty, Inc., 774 F.2d 135, 144 (6th Cir. 1985) (affirming denial of injunctive relief where employees responsible for violations no longer worked for defendant); Hughes v. Dyer, 378 F. Supp. 1305, 1309 (W.D. Mo. 1974) (declining injunctive relief where defendant retired from housing business); and United States v. Matusoff Rental Co., 494 F. Supp. 2d 740 (S.D. Ohio 2007). In Matusoff, the government sought an injunction ordering defendant

> (i) [to] abide by all aspects of the [FHA]; (ii)[to] develop written tenant application processing procedures and tenant selection criteria that is consistent with the [FHA] (ii [the second] ) [to] attend fair housing training from a fair housing organization; (iii)[to] educate his employees and agents about their obligations under the [FHA] (iv)[to] obtain a signed statement from his employees and agents acknowledging that they have read and understand their responsibilities under the court order; (v)[to]

> take steps to ensure that the availability of housing opportunities at his apartment complexes is made known to all interested persons regardless of race, color, [ ] familial status, or other protected bases; (vi)[to] maintain records of all dealings with prospective tenants, from the point when inquiries are made until leases are signed; and (vii)[to] submit regular reports of rental activities to the United States.

Id. at 755-56. The court declined to order such relief because the request did not comply with Rule 65(d), Fed. R. Civ. P., which requires the injunction to describe in reasonable detail the acts sought to be restrained. Id. at 757 (quoting Keyes v. Sch. Dist. No. 1, Denver, Colo., 895 F.2d 659, 668 (8th Cir. 1990)). Injunctions which seek to prohibit "discrimination" do not satisfy Rule 65(d) because they do no more than instruct defendants to obey the law. Id. (quoting Payne v. Travenol Labs., Inc., 565 F.2d 895, 897 (5th Cir.) *cert denied,* 439 U.S. 835 (1978)). The court also found that because he had sold his apartment complexes, defendant could not perform the more specific types of injunctive relief, regarding the manner in which he should operate his complexes in the future.

Matusoff is persuasive for a number of reasons. First, the injunctive relief which the government seeks is too vague to comply with Rule 65(d). Basically, it does no more than instruct defendants to "obey the law." Further, the AIMCO defendants have no continuing interest or responsibility for the CPT property or Sturdevant, and plaintiff has not alleged or shown that any pattern and practice of discrimination extends beyond Sturdevant's conduct at CPT. Accordingly, the extent of defendants' knowledge or supervision of Sturdevant is irrelevant to the question of injunctive relief. The government does not allege that any alleged managerial failures which may have prolonged Sturdevant's discrimination also caused or permitted discrimination at properties other than CPT. Accordingly, summary judgment on two of the government's three claims for injunctive relief is proper.

-10-

The Court sustains defendants' motion for summary judgment and dismisses plaintiff's request to enjoin defendants from (1) coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by Section 803, 804, 805, or 806 of the Fair Housing Act; and (2) discriminating on the basis of race against any person in any aspect of the rental of dwellings, pursuant to 42 U.S.C. § 3614(d)(1)(A).

**IT IS THEREFORE ORDERED** that the <u>Motion Of AIMCO Defendants For Partial Summary Judgment</u> (Doc. #126) filed April 10, 2009 be and hereby is sustained in part. The Court dismisses plaintiff's request to enjoin defendants from (1) coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by Section 803, 804, 805, or 806 of the Fair Housing Act; and (2) discriminating on the basis of race against any person in any aspect of the rental of dwellings, pursuant to 42 U.S.C. § 3614(d)(1)(A).

Dated this 11th day of December, 2009 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge